# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2011AP2902 |
| COMPLETE TITLE: | Board of Regents - UW System, Petitioner-Respondent-Petitioner, v. Jeffrey S. Decker, Respondent-Appellant. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 346 Wis. 2d 279, 827 N.W.2d 929
(Ct. App. 2013 – Unpublished)

| | |
|---|---|
| OPINION FILED: | July 16, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 15, 2013 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Dane |
| JUDGE: | John Markson |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | ABRAHAMSON, C.J. concurs. (Opinion filed.) PROSSER, J., concurs. (Opinion filed.) |
| DISSENTED: | |
| NOT PARTICIPATING: | BRADLEY, J., did not participate. |

ATTORNEYS:

For the petitioner-respondent-petitioner, the cause was argued by *R. Duane Harlow*, assistant attorney general, with whom on the briefs was *J.B. Van Hollen*, attorney general.

For the respondent-appellant, there was brief by *Gary Grass*, Milwaukee, and oral argument by *Gary Grass*.

An amicus curiae brief was filed by *James A. Friedman*, *Dustin B. Brown*, and *Godfrey & Kahn, S.C.*, Madison, on behalf of the American Civil Liberties Union of Wisconsin Foundation, Inc., and oral argument by *Dustin B. Brown*.

**2014 WI 68**

No. 2011AP2902
(L.C. No. 2011CV4619)

STATE OF WISCONSIN         :        IN SUPREME COURT

**Board of Regents - UW System,**

      **Petitioner-Respondent-Petitioner,**

    **v.**

**Jeffrey S. Decker,**

      **Respondent-Appellant.**

**FILED**

**JUL 16, 2014**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed and cause remanded.*

¶1 MICHAEL J. GABLEMAN, J. This is a review of an unpublished decision of the court of appeals[1] reversing a decision and order of the Dane County Circuit Court[2] issuing a harassment injunction against defendant Jeffrey S. Decker pursuant to Wis. Stat. § 813.125 (2009-10).[3]

---

[1] Board of Regents v. Decker, No. 2011AP2902, unpublished slip op. (Wis. Ct. App. Jan. 24, 2013).

[2] The Honorable John W. Markson presiding.

[3] All subsequent references to the Wisconsin Statutes are to the 2009-10 version unless otherwise indicated.

¶2 The question before us is whether the circuit court properly granted a harassment injunction under Wis. Stat. § 813.125, Wisconsin's harassment injunction statute. Decker argues that (1) Wis. Stat. § 813.125 does not extend protection to institutions; (2) his behavior did not constitute harassment under the statute; and (3) the harassment injunction granted by the circuit court was overbroad and vague. The Board of Regents concedes[4] that the injunction was overbroad but asserts that Wis. Stat. § 813.125 protects institutions as well as people, and further argues that Decker's conduct constituted harassment and lacked a legitimate purpose.

¶3 We hold that Wis. Stat. § 813.125 can extend injunctive protection to institutions as well as natural persons. We further hold that the circuit court's decision to grant a harassment injunction was a proper exercise of its discretion, and sufficient evidence existed for the court to find that Decker's conduct constituted harassment and lacked a legitimate purpose. However, because the parties agree the injunction was overbroad, we remand to the circuit court to refine the injunction and clarify its terms. For these reasons, the decision of the court of appeals is reversed, and the cause is remanded to the circuit court.

---

[4] This court is "not bound by the parties' interpretation of the law or obligated to accept a party's concession of law." State v. Carter, 2010 WI 77, ¶50, 327 Wis. 2d 1, 785 N.W.2d 516.

I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

¶4 Jeffrey S. Decker ("Decker") is a former student of the University of Wisconsin—Stevens Point ("UWSP"). On August 13, 2010, Decker met with the UWSP Chancellor, Dr. Bernie Patterson, in the Chancellor's office to discuss Decker's concerns regarding segregated fees charged to students.[5] During the meeting, Decker became agitated and began to talk about university employees in a derogatory manner. Decker also swore at the Chancellor and threatened to interfere with the Chancellor's upcoming State of the University address and donor function if his demands were not met.[6] As tensions escalated during the meeting, Decker reached for a stack of papers on the Chancellor's conference table. The Chancellor informed Decker the papers did not belong to him and tried to pull the documents away, but Decker yanked the papers back and forcibly stabbed

---

[5] Segregated fees are "charges in addition to instructional fees assessed to all students for services, programs and facilities that support the primary mission of the university." Segregated Fees Information, Office of the Registrar, http://registrar.wisc.edu/segregated_fees_information.htm (last visited Dec. 24, 2013). Decker believes that university officials must consult student government prior to assessing segregated fees.

[6] Decker sent several emails to the Chancellor prior to their meeting. For instance, on August 4, 2010, Decker emailed the Chancellor regarding segregated fees and stated, "There is only one answer to the question I pose, and unless you answer it by 9 am tomorrow I will embarrass you before your peers for being in charge of an utterly corrupt and despicable scheme." On August 5, 2010, Decker wrote, "It'll be a few hours before you discover how I've chosen to embarrass you personally for your new role in this scam. Just because I believe in fairness and opportunity, here's this second notice."

them with a pen. The Chancellor then called the police to remove Decker from his office.[7] The Chancellor returned to his office approximately thirty minutes later and found the following note:

> Threat: Due to rampant violations of of [sic] state law, ethical and professional standards and multiple commitments for communication, I shall soon demand the resignation of Kevin Reily [sic] and Bernie Patterson, or a dragon shall do it for all students. Jef Decker

¶5     As a result of Decker's behavior during his meeting with the Chancellor, Decker was brought before a Nonacademic Disciplinary Committee ("the Committee"), which found that Decker had engaged in Disorderly Conduct in violation of Wis. Admin. Code § 18.11(2).[8] The Committee suspended Decker from UWSP

---

[7] Decker provided a slightly different version of events in a written statement he made to UWSP Police. Decker claims he informed the Chancellor that he would demand the resignation of UW System President Kevin Reilly "from within a giant dragon costume." Decker maintains that the Chancellor reacted by "visibly shaking with rage" and vowing to document Decker's threats. Decker alleges he then offered to write down his statements for the Chancellor on a packet of papers in front of Decker. As Decker began to write, Vice Chancellor Bob Tomlinson, who was also present at the meeting, attempted to remove Decker's pen from the papers. Decker resisted and applied more pressure to the pen as the Chancellor seized the papers, resulting in the papers becoming crumpled.

[8] Wisconsin Admin. Code § UWS 18.11(2) states:

No person may engage in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct under circumstances in which the conduct tends to cause or provoke a disturbance, in university buildings or on university lands.

Wisconsin Admin. Code § UWS 17.09(14) provides university officials with disciplinary authority over students in violation of Chapter 18.

4

for the period of November 19, 2010, through January 1, 2012. At the end of the disciplinary meeting, Decker informed the Committee that he had no intention of complying with the suspension.

¶6    Decker was true to his word. University of Wisconsin ("UW") regulations provide that a suspended student is prohibited from being "present on any campus without the written consent of the chief administrative officer of that campus." Wis. Admin. Code § UWS 17.17(4).[9] Nevertheless, Decker continued to enter university property on at least four separate occasions after he was suspended, which are described in detail below.[10]

¶7    On January 22, 2011, Decker requested permission from Chancellor Richard Wells of UW-Oshkosh to enter the campus,

---

[9] Decker later testified before the circuit court that approximately one week after his suspension, he "became aware that the university's position was that Administrative Code 17.17 prohibited me from being on campus." Decker also stated, "it's clear based on my actions after [the suspension], that I do not regard the Administrative Code to be lawful in a free country where public property can be accessed by citizens of this great land."

[10] Although the Board of Regents chronicles only four incidents in which Decker entered UW property after his suspension, Decker was charged with two additional violations of Wis. Admin. Code § UWS 18.11(7)(a), which prohibits suspended students from entering university lands. The first charge stemmed from conduct occurring on February 15, 2011, in Winnebago County, and was dismissed on May 9, 2011. The second charge related to conduct occurring on October 12, 2011, in Winnebago County, and Decker was convicted after a bench trial on January 26, 2012. In addition, although only one of the incidents described by the Board of Regents occurred on the UW-Oshkosh campus, Decker testified before the circuit court that he had been at UW-Oshkosh "several times" since his suspension.

5

which was denied. In spite of Wells' denial, Decker went to an intercollegiate basketball game at UW-Oshkosh and distributed literature to attendees.

¶8 On September 1, 2011, Decker entered UW-Fox Valley property to attend a meeting between members of the UW student government and Ray Cross, the UW Colleges and UW-Extension Chancellor.[11] Decker interrupted the meeting while the Chancellor was posing a question to student government members. The Chancellor asked Decker to leave, but Decker continued to disrupt the meeting. The Chancellor then asked a colleague to call the police and apologetically explained to Decker: "I really hate to do this. If you had remained quiet, Jeff, I wouldn't have done that." Decker responded by admonishing the Chancellor for not returning his phone calls, at which point the Chancellor started to leave the meeting. A student then asked Decker to remain silent: "Mr. Decker, this is our time to visit with the Chancellor. . . . I think it would be respectful if we could spend our time with him. We don't get a whole lot of time."

¶9 Decker promised to be quiet, then after a brief pause, he hijacked the meeting entirely, spending several minutes talking about his suspension from UW. The Chancellor dismissed the meeting and left, followed by the students. The meeting was

---

[11] An unofficial transcript of the meeting was published by The Forum, the student newspaper for UW-Marathon County. See John Kronenwetter, Transcript: UW Colleges Convocation, Student Governance Council Meeting, Sept. 1, 2011 at UW-Fox Valley, The Forum at UW-Marathon County, Nov. 1, 2011.

later reconvened in another room without Decker, who had moved on to a different meeting with the UW Colleges Assistant Deans for Administrative Services, where he was removed by police.

¶10 Decker's next recorded trespass onto UW property occurred on September 8, 2011, when Decker entered a meeting of the Board of Regents held at Van Hise Hall, located on the UW campus at Madison. Decker began to videotape and photograph the proceedings and was asked to leave by university police.[12] Decker declined and continued to film the meeting. University police informed Decker that he was in violation of his suspension and repeated their request that Decker leave the meeting. Decker again refused, and campus police arrested him, at which point Decker went limp and was dragged out of the meeting. Decker was charged with criminal Trespass to Land under Wis. Stat. § 943.13(1m)(a),[13] but charges were ultimately dismissed on April 23, 2012.

---

[12] Decker later posted his footage of the September 8, 2011, meeting on the internet. See UW Corruption, (Feb. 14, 2012), http://www.youtube.com/watch?v=H6VfXogJSEQ&feature=c4overview&list=UUI5M8zovksT35zw07ScBdsw. The video also shows Decker approaching UW-Oshkosh Chancellor Richard Wells with his videocamera as Wells was getting into his car. Decker asked Wells to speak with him and Wells declined. Decker exclaimed, "If you happen to know exactly why you say I'm not stable enough for a university environment, please do tell me." Decker continued to videotape Wells as he drove away.

[13] Wisconsin Stat. § 943.13(1m)(a) prohibits entry onto "any enclosed, cultivated or undeveloped land of another . . . without the express or implied consent of the owner or occupant."

7

¶11 Decker's fourth documented trespass onto UW property occurred on September 19, 2011, when he entered a meeting of the UW-Fox Valley Board of Trustees held on the UW-Fox Valley campus. Decker began to speak at the meeting, but Interim Dean Keogh reminded Decker he was prohibited from entering UW property during his suspension and asked Decker to leave. Decker refused and began handing out literature to meeting attendees as he remarked:

> I, myself, was personally assaulted by the chancellor of the UW-Stevens Point and [the] UW system saw fit to railroad and suspend me, all to protect hundreds of millions of dollars of corruption and the end of rule of law at the University of Wisconsin. . . . I'm not going to leave this meeting. You know, I'll just sit here until the cops haul me out.

By this time, the police had indeed been called. Decker again went limp and continued to denounce university fees as he was dragged from the room.[14] Decker was charged with Disorderly Conduct under Wis. Stat. § 947.01,[15] and he pled no contest on January 9, 2012.

---

[14] According to The Fox Journal, the UW-Fox Valley student newspaper, Decker returned to campus later that afternoon and distributed literature in the office of Senior Student Affairs Coordinator Jeff Kuepper. See Kari Toland, Police arrest former UW-Stevens Point student at Fox, The Fox Journal, Oct. 17, 2011. The article also explained that Decker had been protesting student fees at UW for five years at the time of his September 19 arrest. Id.

[15] Wisconsin Stat. § 947.01(1) provides:

> Whoever, in a public or private place, engages in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct under circumstances in which the conduct tends to

¶12 The UW Board of Regents petitioned the Dane County Circuit Court, Judge John Markson presiding, for a temporary restraining order against Decker on October 17, 2011. The petition named the University of Wisconsin System as the protected party. It requested Decker be required to (1) cease or avoid harassing the protected party; (2) avoid the protected party's residence and/or any premises it temporarily occupies; (3) avoid contact that harasses or intimidates the protected party; and (4) refrain from entering upon any real property owned by, leased by, or otherwise subject to the control of the Board of Regents of the University of Wisconsin System. The temporary restraining order was granted and an injunction hearing was scheduled for October 24, 2011.

¶13 UW-Oshkosh Police Chief Joseph LeMire attempted to serve the temporary restraining order papers on Decker on October 18, 2011. Decker was on his porch when the Chief arrived at his house, but when the Chief got out of his car, Decker went inside, closed the door, and refused to answer the doorbell. The Chief left and drove around the block, but when he returned, Decker's car was gone. A handgun hotline report later informed the Chief that, after Decker had left his house, he had immediately attempted to purchase a handgun.

---

cause or provoke a disturbance is guilty of a Class B misdemeanor.

¶14 On October 24, 2011, Judge Markson held an injunction hearing to discuss the Board of Regents' petition. The circuit court found that Decker attended meetings at UW,

> knowing that he would be asked to leave, knowing that he was not intending to leave, and then necessarily what that would entail, which would be calling the officers and causing the sort of disturbance that was present on each of the occasions that were the subject of testimony.

The circuit court concluded that Decker's repeated entry onto UW property in willful violation of his suspension "constitutes conduct of a sort that is harassing and intimidating" and was "not done for any lawful or legitimate purpose." The circuit court also found "clear and convincing evidence that there is a real concern that Mr. Decker may use a firearm to cause physical harm to another or endanger the public safety." The circuit court reasoned that the persistence of Decker's harassing behavior, his resistance to law enforcement, and his purchase of a handgun immediately after Chief LeMire attempted to serve him with the restraining order were sufficient to order a firearm restriction for the pendency of the harassment injunction. The circuit court noted Decker already possessed four other guns and remarked, "It has not been satisfactorily explained to me the reason for his needing to buy yet another handgun and doing so immediately after being aware that process is being served on him in this case."

¶15 The circuit court granted a harassment injunction against Decker based on the Board of Regents' petition and pursuant to Wis. Stat. § 813.125, effective through October 24,

2015. The harassment injunction named the "Board of Regents UW System," as the protected party, although the Board of Regents' petition requested protection for the "University of Wisconsin System." Decker was ordered to cease or avoid harassment of the "Board of Regents UW System," avoid the residence and any premises temporarily occupied by the Board of Regents, and refrain from contacting the Board of Regents. Decker was also prohibited from possessing a firearm until the harassment injunction expired.

¶16 In an unpublished, per curiam decision, the court of appeals reversed the circuit court's order for a harassment injunction. Board of Regents v. Decker, No. 2011AP2902, unpublished slip op. (Wis. Ct. App. Jan. 24, 2013). The court of appeals reasoned that the harassment injunction statute, Wis. Stat. § 813.125, requires a party seeking an injunction to prove "(1) that the defendant intentionally engaged in a course of conduct which harassed the victim; and (2) that the defendant's conduct served no legitimate purpose." Id., ¶7. The court of appeals assumed, without deciding, that Decker's conduct constituted harassment, but it determined Decker had a legitimate purpose for his actions. Id., ¶10. The court found that Decker's purpose in attending the UW meetings was to protest university student fees, which was conduct he had been engaging in since at least 2010. Id., ¶12. The court of appeals noted that Decker's right "to publicly demonstrate, protest and persuade others" is constitutionally protected. Id., ¶13. Since "legitimate protest of government policies is protected by law,"

11

the court of appeals concluded Decker had a legitimate purpose, and the harassment injunction was therefore improperly granted by the circuit court. Id.

¶17 The Board of Regents petitioned this court for review, which we granted on June 14, 2013. We now reverse and remand to the circuit court for the reasons discussed below.

## II. STANDARD OF REVIEW

¶18 This case requires us to examine the harassment injunction statute, Wis. Stat. § 813.125, to determine if the statute applies to conduct against institutions in addition to natural persons. Statutory interpretation is a question of law that this court reviews de novo. State v. Alexander, 2013 WI 70, ¶18, 349 Wis. 2d 327, 833 N.W.2d 126; Crown Castle USA, Inc. v. Orion Constr. Grp., LLC, 2012 WI 29, ¶12, 339 Wis. 2d 252, 811 N.W.2d 332.

¶19 We review a circuit court's decision to grant a harassment injunction for an erroneous exercise of discretion. Welytok v. Ziolkowski, 2008 WI App 67, ¶23, 312 Wis. 2d 435, 752 N.W.2d 359. We look for reasons to sustain a discretionary ruling. Id., ¶24. In addition, "[t]he scope of an injunction is within the sound discretion of the trial court." Id.

¶20 Though the decision to issue an injunction is within the discretion of the circuit court, in order to grant an injunction under Wis. Stat. § 813.125, the circuit court must find "reasonable grounds to believe that the respondent has engaged in harassment with intent to harass or intimidate the petitioner." Wis. Stat. § 813.125(4)(a)3. Such a finding

12

presents a mixed question of fact and law. Welytok, 312 Wis. 2d 435, ¶23. This court will uphold the factual findings of the circuit court unless they are clearly erroneous. Id. However, whether reasonable grounds exist to grant the injunction is a question of law that we review de novo. Id.

### III. DISCUSSION

¶21 The question before us is whether the harassment injunction against Decker was properly granted by the circuit court under Wis. Stat. § 813.125, the harassment injunction statute. The Board of Regents argues Wis. Stat. § 813.125 protects institutions as well as people. The Board of Regents further claims Decker's conduct constituted harassment and lacked a legitimate purpose because his intent was to harass the board and his actions were illegal as a matter of law. Decker responds that Wis. Stat. § 813.125 does not provide authority to issue a harassment injunction to protect an institution. Decker also maintains he had a legitimate purpose to protest the Board's activities, and therefore his conduct did not constitute harassment as defined by Wis. Stat. § 813.125(1)(b). Decker's final argument is that the circuit court's harassment injunction is overbroad and vague in its scope.

¶22 We begin in Part A by addressing whether Wis. Stat. § 813.125 applies to institutions as well as people. In Part B, we discuss whether Decker's conduct constituted harassment and lacked a legitimate purpose pursuant to Wis. Stat. § 813.125(1)(b). Finally, in Part C, we discuss the scope of the harassment injunction. For the reasons discussed below, we find

13

that Wis. Stat. § 813.125 applies to institutions, and Decker's conduct constituted harassment that was properly enjoined. However, because the parties agree the injunction was overbroad, we remand to the circuit court to refine the harassment injunction and clarify its terms.

A. Wisconsin Stat. § 813.125 Protects Institutions

¶23 Wisconsin's harassment injunction statute, Wis. Stat. § 813.125, provides, in relevant part, as follows:

(1) Definition. In this section, "harassment" means any of the following:

(a) Striking, shoving, kicking or otherwise subjecting another person to physical contact; engaging in an act that would constitute abuse under s. 48.02(1), sexual assault under s. 940.225, or stalking under s. 940.32; or attempting or threatening to do the same.

(b) Engaging in a course of conduct or repeatedly committing acts which harass or intimidate another person and which serve no legitimate purpose.

¶24 The Board of Regents contends Wis. Stat. § 813.125 protects institutions as well as individuals. For support, the Board of Regents relies on Wis. Stat. § 990.01, which contains the general definitions and rules of construction for Wisconsin laws. Wisconsin Stat. § 990.01 provides:

In the construction of Wisconsin laws the words and phrases which follow shall be construed as indicated unless such construction would produce a result inconsistent with the manifest intent of the legislature.

Wisconsin Stat. § 990.01(26) goes on to define "person" as including "all partnerships, associations and bodies politic or corporate." The Board of Regents argues that it is a political

14

body, and under Wis. Stat. § 36.07(1), it is also a corporate body: "The board and their successors in office shall constitute a body corporate by the name of 'Board of Regents of the University of Wisconsin System.'" The Board of Regents also notes that in Village of Tigerton v. Minniecheske, 211 Wis. 2d 777, 565 N.W.2d 586 (Ct. App. 1997), the court of appeals held that Wis. Stat. § 813.125 can protect a municipal corporation.

¶25 Decker argues Wis. Stat. § 813.125(1)(a) clearly contemplates harassment directed towards an individual and not institutions. An institution such as the Board of Regents cannot be the target of "[s]triking, shoving, kicking or . . . physical contact," nor can it be subjected to physical or sexual abuse, sexual assault, or stalking. Although Decker's harassment injunction was issued under Wis. Stat. § 813.125(1)(b), Decker maintains the language of this subsection also suggests a human subject. Relying on dictionary definitions of "harass," Decker argues an institution cannot be "subjected to mental agitation, worry, grief, anxiety, distress, or fear."

¶26 We agree with the Board of Regents' argument that Wis. Stat. § 813.125 protects institutions as well as people. Although Wis. Stat. § 813.125(1)(b) describes harassment as "committing acts which harass or intimidate another person," Wisconsin's general definitions statute defines a "person" as including "all partnerships, associations and bodies politic or corporate." Wis. Stat. § 990.01(26) (emphasis added). This definition is presumed applicable to the harassment injunction

15

statute "unless such construction would produce a result inconsistent with the manifest intent of the legislature." Wis. Stat. § 990.01. In Tigerton, the court of appeals noted, "the legislature's definition of 'person' predates the harassment statute." Tigerton, 211 Wis. 2d at 784. The court of appeals in Tigerton relied on the "maxim that assumes the lawmakers acted with full knowledge of existing laws, including statutes" and concluded the legislature intended the general statutory definition of "person" to govern the harassment injunction statute. Id. Likewise, we assume the legislature was aware of the statutory definition of "person" when it enacted Wis. Stat. § 813.125 and intended that definition to apply. Nothing in Wis. Stat. § 813.125 indicates such a reading would be contrary to the "manifest intent" of the legislature. Moreover, our conclusion is supported by the court of appeals' decision in Tigerton, which held that Wis. Stat. § 813.125 applies to municipal corporations. Id. at 783.

¶27 Having determined that the statutory definition of "person" in Wis. Stat. § 990.01(26) applies to the harassment injunction statute, we must next consider whether the Board of Regents qualifies as a "person" under this definition. Wisconsin Stat. § 990.01(26) defines a "person" as including "all partnerships, associations and bodies politic or corporate." There is ample reason to think the Board of Regents constitutes a body politic. The Board of Regents is empowered to enact policies and promulgate rules; employ police officers to enforce its rules; appoint officers and delegate authority to those

16

officers; allocate funds and set institutional budgets; establish a mission statement; and purchase, lease, and manage property. Wis. Stat. § 36.11; see also Rouse v. Theda Clark Med. Ctr., Inc., 2007 WI 87, ¶31, 302 Wis. 2d 358, 735 N.W.2d 30 (holding that the University of Wisconsin Hospital and Clinics Authority is a political corporation because of "the power granted [to it] by the legislature"). In addition, members of the Board of Regents are primarily appointed by the Governor. Wis. Stat. § 15.91; see also University of Wisconsin System Board of Regents, University of Wisconsin System, http://www.wisconsin.edu/bor/ (last visited July 8, 2014). In Watkins v. Milwaukee County Civil Service Commission, we held that the Milwaukee County Civil Service Commission is a "body politic" because the Commission "consist[s] of appointed members who perform statutorily defined, important governmental functions entirely independent of the governmental entity which appoints members." Watkins v. Milwaukee Cnty. Civil Serv. Comm'n, 88 Wis. 2d 411, 417-418, 276 N.W.2d 775 (1979).

¶28 Moreover, regardless of whether the Board of Regents is a body politic, it is plainly structured as a body corporate under Wis. Stat. § 36.07(1): "The board and their successors in office shall constitute a body corporate by the name of 'Board of Regents of the University of Wisconsin System.'" Accordingly, we conclude that the Board of Regents is a "person" as defined in Wis. Stat. § 990.01(26) and is therefore eligible for injunctive protection under Wis. Stat. § 813.125.

17

¶29 We agree with Decker that Wis. Stat. § 813.125(1)(a), when read in isolation, does appear to contemplate harassment directed towards a natural person. However, a party seeking a harassment injunction must establish the requirements of either Wis. Stat. § 813.125(1)(a) or (1)(b). The harassment injunction against Decker was issued under Wis. Stat. § 813.125(1)(b), and nothing in the language of that provision invites the same conclusion. It is an established canon of statutory interpretation that "statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110.

¶30 Decker claims an institution cannot be "harassed" or "intimidated," as described in Wis. Stat. § 813.125(1)(b), but the very fact that the Board of Regents sought a harassment injunction against Decker indicates otherwise. After all, an institution is nothing more than a collection of individuals engaged in a common purpose. An institution, as well as an individual, can be the subject of threats and intimidation, which is why protests and picket rallies are often organized outside of an institution's headquarters. Protestors frequently target institutions in an attempt to elicit a response and draw attention to themselves and their cause. Likewise, Decker obviously sought to influence the Board of Regents through a calculated, long-term scheme of protesting, handing out

18

literature, filming university board members and officials, and disrupting university events. Decker might as easily be arguing that an institution cannot be "influenced" or "persuaded," but this is clearly not what he believes. Decker's actions are a manifestation of his belief that an institution can be harassed or intimidated in the same way that it can be influenced or persuaded.

¶31 Our conclusion that institutions are eligible for injunctive protection under Wis. Stat. § 813.125 is also supported by public policy concerns. An injunction has several features that make it an especially desirable remedy for harassment victims. First, an injunction can be quickly obtained when circumstances demand an immediate remedy. Second, a victim can proactively seek protection by taking the initiative to seek an injunction. Third, injunctive relief does not depend on the criminal justice system, which can take months or even years to render a final judgment. Other hindrances such as understaffed prosecutor's offices, limited judicial resources, and the higher burden of proof required by the criminal justice system may, separately or in the aggregate, serve to deny a harassment victim any protection.

¶32 Decker argues the Board of Regents does not need access to injunctive relief because it already possesses a sufficient remedy under Wis. Stat. § 947.01, Wisconsin's criminal disorderly conduct statute. The American Civil Liberties Union ("ACLU") took a similar position in its amicus brief. The ACLU also asserted during oral arguments that a

19

harassment victim's first recourse should always be to pursue criminal charges. We conclude that such a requirement would lead to absurd results. As discussed above, many features of a harassment injunction make it a superior remedy for victims. Harassment injunctions protect a variety of individuals, including those faced with serious and imminent threats to their safety, such as domestic violence victims. In 2012, circuit courts in Wisconsin handled 6,824 petitions for harassment injunctions and temporary restraining orders.[16] Thousands of individuals would be adversely affected if this court agreed with the ACLU's position that criminal charges must be pursued before a harassment injunction can be issued.

¶33 Moreover, both Decker and the ACLU fail to note that the Board of Regents did pursue criminal relief prior to obtaining the harassment injunction. In fact, Decker's history with the Board of Regents demonstrates precisely why a criminal remedy is sometimes inadequate. Decker was arrested multiple times by university police, and as Decker explained to the circuit judge, the university was unable to successfully prosecute him prior to issuance of the harassment injunction. Although Decker was arrested on September 8, 2011, and charged with Trespass to Land under Wis. Stat. § 943.13(1m)(a), the prosecutor ultimately dropped the charges. Decker was also

---

[16] Civil Disposition Summary—Statewide Report, Wisconsin Court System, https://www.wicourts.gov/publications/statistics/circuit/docs/civildispostate12.pdf.

20

arrested again on September 19, 2011, but he was not convicted of Disorderly Conduct under Wis. Stat. § 947.01 until some two and a half months after the circuit court had already granted the harassment injunction.

¶34 In addition, university officials have a responsibility to ensure the health and safety of students. See, e.g., Wis. Stat. § 36.11(1)(a), (2)(b) (providing authority for the Board of Regents to enact laws "to protect the lives, health and safety of persons on property under its jurisdiction" and to employ police officers to "preserve the peace" and enforce university rules). It cannot be disputed that threats to student safety are on the rise. No institution, including a university, should be forced to rely on the criminal justice system when a more immediate remedy is available. A harassment injunction may not prevent a tragedy such as the atrocious shooting at Virginia Tech or Sandy Hook,[17] but it is nevertheless an important and effective tool for university officials to maintain order and ensure student health and safety.

B.   Decker's Conduct Constituted Harassment and Lacked a Legitimate Purpose

¶35 We next address whether Decker's conduct constituted harassment that could be properly enjoined under Wis. Stat.

---

[17] For background information on the shootings at Virginia Tech, see Christine Hauser & Anahad O'Connor, Virginia Tech Shooting Leaves 33 Dead, N.Y. Times, Apr. 16, 2007. For more information about the shooting at Sandy Hook elementary school, see Steve Vogel et al., Sandy Hook Elementary shooting leaves 28 dead, law enforcement sources say, Wash. Post, Dec. 14, 2012.

§ 813.125. A circuit court may grant a harassment injunction if there are "reasonable grounds to believe that the respondent has engaged in harassment with intent to harass or intimidate the petitioner." Wis. Stat. § 813.125(4)(a)3. Harassment is defined as "[e]ngaging in a course of conduct or repeatedly committing acts which harass or intimidate another person and which serve no legitimate purpose." Wis. Stat. § 813.125(1)(b).

¶36 The Board of Regents argues that Decker's persistent disruptions at university meetings demonstrate an intent to harass. The Board of Regents also contends that because Decker was prohibited from entering UW property during his suspension, Decker's conduct was illegal as a matter of law and could not serve a legitimate purpose. The Board of Regents acknowledges that Decker was protesting student fees but asserts that otherwise harassing behavior cannot be transformed into non-harassing, legitimate conduct simply by labeling it "protest."

¶37 Decker argues his conduct did not constitute harassment because he had the legitimate purpose of protesting student fees. Decker points out that harassment under Wis. Stat. § 813.125(1)(b) is conduct that serves "no legitimate purpose." Therefore, Decker contends, his conduct could not constitute harassment if he was motivated by any legitimate purpose. Decker maintains his history of protesting UW's segregated student fees demonstrates he was not motivated by a desire to harass.

¶38 We agree with the circuit court that Decker's conduct constituted harassment and lacked a legitimate purpose, and that Decker possessed the requisite intent to harass. In Bachowski v.

22

_Salamone_, we explained, "conduct or repetitive acts that are intended to harass or intimidate do not serve a legitimate purpose." _Bachowski v. Salamone_, 139 Wis. 2d 397, 408, 407 N.W.2d 533 (1987). Decker argues conduct can never constitute harassment if it is done for any legitimate purpose, such as protesting. Taken to its logical conclusion, this argument suggests that if an individual has both a legitimate and an illegitimate purpose, the legitimate purpose automatically protects the individual's conduct from being enjoined. Put another way, according to Decker's logic, conduct done with both the purpose of protesting and the purpose of harassing cannot constitute harassment. This is a senseless argument that flatly contradicts our holding in _Bachowski_ that intentionally harassing conduct can _never_ serve a legitimate purpose. Decker cannot shield his harassing conduct from regulation by labeling it "protest." If Decker's purpose was even in part to harass the Board of Regents, his conduct may be enjoined under Wis. Stat. § 813.125.

¶39 The circuit court described the evidence presented at the injunction hearing regarding Decker's repeated entry onto UW property as follows:

> . . . We did have corroborating evidence that people have complained about that and found Decker's presence at meetings, knowing he would be asked to leave, knowing that he was not intending to leave, and then necessarily what that would entail, which would be calling the officers and causing the sort of disturbance that was present on each of the occasions that were the subject of testimony here . . . .

23

> I credit the testimony of the witnesses that were offered by the university here. I think it was credible, and I think it establishes a pattern, and a pattern that if not enjoined, I am confident that based on Mr. Decker's testimony today, he will intend to repeat. And it constitutes harassment. It's not done for any lawful or legitimate purpose.

The circuit court found that Decker had repeatedly trespassed on UW property with the intent to disrupt university proceedings. We uphold the circuit court's findings of fact unless they are clearly erroneous. Welytok, 312 Wis. 2d 435, ¶23. Based on the evidence presented at the injunction hearing, the circuit court concluded that Decker's conduct constituted harassment and lacked a legitimate purpose. The circuit court, in its discretion, decided to grant the harassment injunction against Decker. We give deference to a circuit court's decision to issue a harassment injunction, upholding it absent an erroneous exercise of discretion. Id. Based on the record, we conclude that there was ample evidence to support the circuit court's factual findings and its decision to grant the harassment injunction against Decker.

¶40 The evidence presented before the circuit court demonstrated the following: first, Decker swore at and threatened the UWSP Chancellor in a meeting and stabbed the Chancellor's documents with a pen during a heated argument. Second, Decker told the suspension committee that he had no intention of complying with his suspension, and Decker was aware his suspension prohibited him from entering UW property. Third, Decker trespassed on UW property on numerous occasions after his suspension and disrupted several university meetings. Fourth,

24

Decker attempted to purchase a handgun immediately after police endeavored to serve him with a restraining order.

¶41 Specifically, the evidence at the injunction hearing established that on September 1, 2011, Decker interrupted a meeting between student government members and the UW Colleges and UW-Extension Chancellor. University police arrested Decker, but prior to their arrival Decker was so disruptive that the Chancellor was forced to end the meeting. On September 8, 2011, Decker returned to UW property and disrupted another meeting. When Decker was again arrested, he went limp and police had to drag Decker from the meeting. Not to be dissuaded from causing further disruption, Decker again trespassed on UW property on September 19, 2011, and upset yet another meeting. University officials repeatedly asked Decker to be quiet, but he refused. Once again, Decker was arrested and forcibly dragged from the meeting as he continued his diatribe against student fees. All of these events were delineated at Decker's injunction hearing, providing the circuit court with overwhelming evidence to conclude that Decker's conduct constituted harassment and lacked a legitimate purpose. Based on Decker's pattern of knowingly trespassing on university property to interrupt university meetings, and his blatant disregard for the rights of university officials and students, the circuit court could also reasonably find that Decker engaged in harassment with the intent to harass.

¶42 The circuit court also concluded that Decker may present a threat to public safety. Decker's attempted purchase

25

of a handgun immediately after police visited his home led the circuit court to find there was "clear and convincing evidence that there is a real concern that Mr. Decker may use a firearm to cause physical harm to another or endanger the public safety."[18] The circuit court's public safety concern is bolstered by Decker's prior exchanges with the UWSP Chancellor. For instance, Decker left a note in the Chancellor's office that he specifically designated a "threat." Decker also sent several intimidating emails to the Chancellor. The circuit court could reasonably conclude that Decker's conduct was unpredictable at best and dangerous at worst. The risk to public safety, combined with Decker's pattern of trespassing and his deliberate disruption of university meetings, provides abundant support for the circuit court's decision to issue the harassment injunction.

¶43 We recognize that Decker's protests implicate First Amendment concerns.[19] "With respect to persons entitled to be

---

[18] Decker also argues in his brief that the harassment injunction's firearm restriction was not supported by clear and convincing evidence and violated his Second Amendment right to bear arms. We disagree and conclude that the circuit court correctly determined that Decker's outburst during his meeting with Chancellor Patterson, his history of volatile behavior, and his attempted purchase of a handgun after police tried to serve him with a temporary restraining order supplied a sufficient basis to find clear and convincing evidence existed to support the firearm restriction. We defer to the circuit court's findings of fact unless they are clearly erroneous. Welytok, 312 Wis. 2d 435, ¶23.

[19] Sections 3 and 4, art. I, of the Wisconsin Constitution "guarantee the same freedom of speech and right of assembly and petition as do the First and Fourteenth amendments of the United States constitution." Lawson v. Hous. Auth. of City of Milwaukee, 270 Wis. 269, 274, 70 N.W.2d 605 (1955).

26

there, our cases leave no doubt that the First Amendment rights of speech and association extend to the campuses of state universities." Widmar v. Vincent, 454 U.S. 263, 268-69 (1981). The United States Supreme Court applies a forum-based approach to government restrictions on speech. The applicable level of judicial scrutiny is determined based on whether the forum involved is a traditional public forum, a designated public forum, or a non-public forum.[20] Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45-46 (1983); see also Kevin Francis O'Neill, Disentangling the Law of Public Protest, 45 Loy. L. Rev. 411, 422-23 (1999). Public meetings at state universities are designated public forums and, consequently, are afforded the same constitutional protections as traditional public forums. Widmar, 454 U.S. at 267-68, 270.

¶44 Under this standard, a time, place, and manner restriction is constitutional if it is reasonable and content-neutral. See, e.g., Capitol Square Review & Advisory Bd. v.

---

[20] Traditional public forums are places such as parks, streets, and sidewalks, "which by long tradition or by government fiat have been devoted to assembly and debate." Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983). A designated public forum is "created by government designation of a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects." Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 802 (1985). Non-public forums are places "which, by tradition or design, are not appropriate platforms for unrestrained communication" such as "military installations and federal workplaces." Paulsen v. Cnty. of Nassau, 925 F.2d 65, 69 (2d Cir. 1991).

27

Pinette, 515 U.S. 753, 761 (1995); Perry, 460 U.S. at 46. An individual's ability to protest is therefore not unlimited.[21] Rather, it is subject to reasonable regulation.

¶45 We have recognized that an individual's First Amendment speech rights are "not absolute." State v. Givens, 28 Wis. 2d 109, 118, 135 N.W.2d 780 (1965). "The right to demonstrate (even peaceably) in pursuance of our constitutional rights of freedom of speech, freedom of assembly and freedom to petition for redress of grievances might be appropriate in one place and not in another." Id. at 121. The United States Supreme Court has explained that a student may express his opinions,

> If he does so . . . without colliding with the rights of others. . . . But conduct by the student, in class or out of it, which for any reason . . . materially disrupts classwork or involves substantial disorder or invasion of the rights of others is, of course, not immunized by the constitutional guarantee of freedom of speech.

---

[21] See, e.g., Int'l Soc'y for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 683 (1992) (statute restricting distribution of literature in an airport terminal is constitutional); Frisby v. Schultz, 487 U.S. 474, 486 (1988) (upholding an ordinance prohibiting picketing before or about the residence or dwelling of any individual); Cornelius, 473 U.S. at 799-800 ("Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the . . . disruption that might be caused by the speaker's activities."); Galena v. Leone, 638 F.3d 186, 213 (3d Cir. 2011) (ejection of a resident from a county legislative meeting who objected during a period not open to public comment was constitutional); M.A.L. ex rel. M.L. v. Kinsland, 543 F.3d 841, 847 (6th Cir. 2008) (upholding a policy restricting middle school student from distributing literature in school hallways).

Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 513 (1969). Decker's right to protest on UW property can be restricted when he engages in harassment with the intent to harass or intimidate. The circuit court's conclusion that Decker engaged in harassment with the intent to harass or intimidate the Board of Regents was supported by an abundance of evidence, and we give deference to the circuit court's decision to issue the harassment injunction. We conclude that the circuit court's decision to grant a harassment injunction was a proper exercise of its discretion.

### C. The Scope of the Harassment Injunction

¶46 Decker's final argument is that the harassment injunction is vague and overbroad in its scope. Decker maintains that because the harassment injunction prohibits him from contacting any university representatives, the injunction proscribes contact with all 40,000 university employees and, arguably, all 181,000 university students. By its terms, Decker asserts that the injunction "forbid[s] benign association with one 25th of the state population." Decker claims the injunction's reach extends to members of Decker's religious congregation and his professional contacts. Decker also contends the injunction infringes on his First Amendment rights by enjoining contact with thousands of people who were unaffected by the complained-of conduct.

¶47 The Board of Regents did not address the scope of the harassment injunction in its brief, but it conceded at oral argument that the harassment injunction was overbroad.

29

¶48 Because the parties both concede that the injunction is overbroad, we need not address this issue. Rather, we remand to the circuit court to refine the injunction.[22] In Bachowski, we explained that, because the violation of a harassment injunction is a criminal offense, the injunction "must be specific as to the acts and conduct which are enjoined." Bachowski, 139 Wis. 2d at 414. Clarity in a harassment injunction is essential, not just for the parties involved, but also in order for law enforcement to effectively enforce it. See, e.g., State v. Sveum, 2002 WI App 105, ¶24, 254 Wis. 2d 868, 648 N.W.2d 496 ("Before the violation of a harassment injunction may be found, the State must prove at least that: (1) an injunction was issued against the defendant under Wis. Stat. § 813.125; and (2) the defendant committed an act that violated the terms of the injunction.)".

¶49 The protected party named in the harassment injunction is the "Board of Regents UW System." However, the petition for the injunction requested protection for the "University of Wisconsin System" as a whole, and the petitioner for the harassment injunction was the "Board of Regents – Univ. of

---

[22] For instance, the circuit court ordered Decker to "avoid[] the residence and any premises temporarily occupied by the petitioner/protected person." We note that the University of Wisconsin System may include entities such as the University of Wisconsin Hospital and Clinics, UW-affiliated bookstores and theaters, and the University of Wisconsin Foundation, an independent charitable institution. By refining the harassment injunction, the circuit court can clarify whether it intended such an expansive reach.

Wisconsin System." In addition, the circuit court explained at the injunction hearing that Decker was restrained from contacting "the UW or any of its representatives." Consequently, it may be unclear to both Decker and law enforcement who the protected party is.[23]

¶50 We are not equipped with sufficient facts to undertake the task of refining the harassment injunction.  In this case, the circuit court found that Decker's conduct constituted harassment[24] and made a discretionary decision to grant the injunction. The circuit court is therefore better situated to assess the facts and apply its discretion to craft an injunction tailored to the particularized facts of each case.

---

[23] We do not suggest that a harassment injunction that protects an institution can never proscribe contact with specific individuals. An institution can be defined in many different ways, from its organizational structure or real estate holdings to its list of members, employees, or representatives. The larger the institution, the greater the difficulty in defining the scope of the protection afforded by the injunction. These issues do not arise in the context of a typical harassment injunction protecting an individual, such as a domestic violence victim.  Therefore, the scope of an injunction protecting an institution may need to be structured with greater care than an ordinary injunction protecting an individual. Obviously, nothing in this opinion limits the authority of a circuit court to craft an appropriate injunction to protect an individual.

[24] We acknowledge that Decker's suspension was set to expire on January 1, 2012.  There is nothing in the record to indicate whether Decker's suspension actually expired, whether it was extended, or whether Decker has since been suspended again for other reasons.  In the time this case has taken to come before us, the terms of Decker's suspension might very well have changed, and we decline to speculate on its current status.  The parties are free to request an amendment to the injunction from the circuit court if they have additional particularized needs or concerns that pertain to facts not before us.

31

¶51 We conclude the circuit court properly determined that a harassment injunction can be granted to protect the Board of Regents from Decker's harassing behavior, and it provided ample support for its reasoning on a difficult issue that implicated both First Amendment and public safety concerns. However, we remand to the circuit court to refine the injunction and clarify its terms.

IV.   CONCLUSION

¶52 We hold that Wis. Stat. § 813.125 can extend injunctive protection to institutions as well as natural persons. We further hold that the circuit court's decision to grant a harassment injunction was a proper exercise of its discretion, and sufficient evidence existed for the court to find that Decker's conduct constituted harassment and lacked a legitimate purpose. However, because the parties agree the injunction was overbroad, we remand to the circuit court to further clarify the scope of the injunction. For these reasons, the decision of the court of appeals is reversed, and the cause is remanded to the circuit court.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶53 ANN WALSH BRADLEY, J., did not participate.

¶54 SHIRLEY S. ABRAHAMSON, C.J. *(concurring).* Everyone involved in the instant case——including the Board of Regents,[1] Decker, and this court[2]——agrees that the circuit court's harassment injunction does not pass muster:  the scope of the injunction is impermissibly broad.  The majority opinion correctly asserts that the circuit court's harassment injunction fails to identify the protected party and fails to specify the conduct to be enjoined.[3]

¶55 Because the injunction is overbroad, the injunction is invalid.[4]  On remand, the circuit court must refine the injunction and clarify its terms.  Majority op., ¶3.  In effect, the circuit court must craft a new injunction.

¶56 The harassment statute, Wis. Stat. § 813.125, is obviously designed to address harassment of individuals, especially instances of domestic child and family harassment or

---

[1] See majority op., ¶¶48-49.

[2] "[I]t may be unclear to both Decker and law enforcement who the protected party is."  Majority op., ¶49.

[3] Majority op., ¶48 & n.22 (noting that both parties "concede that the injunction is overbroad," that it is unclear who the protected party is, and that the "expansive reach" of the circuit court injunction extends to broad property).

There are even discrepancies between the circuit court's oral ruling on the injunction and the written form injunction that it issued.

[4] Bachowski v. Salamone, 139 Wis. 2d 397, 414, 407 N.W.2d 533 (1987) ("[T]he injunction is drafted too broadly and is therefore invalid.").

1

violence.  Such cases are very different from the instant case.[5]  The instant case does not fit easily into the statute.[6]  The statute is somewhat difficult to adapt to the present case because the statute was intended to safeguard one individual from another individual's harassment.  Although I agree with the majority opinion that our case law has interpreted the statute to permit harassment injunctions to protect "persons" (defined more broadly than "individuals" in Wis. Stat. § 990.01(26)),[7] the

---

[5]  See 2005 Wis. Act 272 (defining "harassment" to include sexual assault, abuse under Wis. Stat. § 48.02(1), and stalking under Wis. Stat. § 940.32).

[6] The majority opinion agrees that "Wis. Stat. § 813.125(1)(a) . . . does appear to contemplate harassment directed towards a natural person." Majority op., ¶29.

The forms used in the circuit court are designed for individuals (not for harassment of a body politic or a corporate body).  The forms, like many forms, have to be supplemented to fit the facts presented.  The Board of Regents did supplement its petition, but the circuit court did not supplement the form injunction in the instant case.  The circuit court's injunction is attached as an appendix.

[7] Majority op., ¶¶26-27; see also Village of Tigerton v. Minniecheske, 211 Wis. 2d 777, 565 N.W.2d 586 (Ct. App. 1997).

The majority opinion acknowledges the difficulty of determining how to characterize a non-individual person for the purposes of a harassment injunction.  The majority opinion refers to the Board of Regents variously as:

(1)  A non-individual "body politic." Majority op., ¶¶26-27;

(2)  A non-individual "body corporate." Majority op., ¶¶24, 26; and

(3) An "institution," defined by the majority opinion as "a collection of individuals engaged in a common purpose." Majority op., ¶¶24, 30.

2

statutory language and the one-size-fits-all required forms designed to protect individuals are difficult to apply to non-individuals and to the present case.[8] Therefore, circuit courts should exercise caution in crafting harassment injunctions to protect non-individual persons.

¶57 I write to point out matters that the circuit court must consider in crafting a new injunction. I begin by concisely summarizing in chart form the circuit court's injunction and what remains of the injunction under the majority opinion.

**INJUNCTION**

|  | **CIRCUIT COURT** | **MAJORITY OPINION** |
|---|---|---|
| **PROTECTED PARTY** | The Board of Regents; "the UW or any of its representatives"[9] | "[I]t may be unclear to both Decker and law enforcement who the protected party is."[10] |
| **HARASSING CONDUCT** | Trespassing onto UW land in violation of terms of suspension | Trespassing onto UW land in violation of terms of suspension |
| **ENJOINED BEHAVIOR** | Harassment; avoid the residence; contacting | The majority opinion notes the expansive |

---

[8] The circuit court used form CV-407, 11/13 Injunction (Order of Protection – Harassment), which is mandated for use in civil actions under Wis. Stat. §§ 807.001 and 758.18(1).

[9] The harassment injunction could conceivably extend to thousands of people, including UW faculty, staff, and students. The University has about 40,000 employees and 181,000 students.

[10] Majority op., ¶49.

3

| | | |
|---|---|---|
| | the UW or any of its representatives unless they consent in writing. Avoid premises occupied by University of Wisconsin System, all of its campuses, any premises under the control of the Board of Regents.[11] | reach of the injunction but mentions no enjoined conduct.[12] |

¶58 In effect, the majority opinion vacates the circuit court's injunction, because as the majority opinion explains, the injunction is unclear in its description of the party protected or the enjoined conduct.

¶59 The mandate of the majority opinion is somewhat misleading when it "reverse[s]" the court of appeals and "remand[s]" the issue to the circuit court.[13] Both the majority

---

[11] The written circuit court injunction required Decker to "avoid the residence and any premises temporarily occupied by the protected party."

At the hearing, the circuit court orally ordered Decker "to avoid any premises occupied by the petitioner or protected person, namely the University of Wisconsin system, all of its campuses, any premises under the control of the Board of Regents."

[12] Majority op., ¶47 & n.21.

[13] Majority op., ¶52.

4

opinion and the court of appeals agree that the circuit court must craft a new injunction.

¶60 In crafting a new injunction, the circuit court must adhere to the legal standards for a harassment injunction as stated in Bachowski v. Salamone, 139 Wis. 2d 397, 414-15, 407 N.W.2d 533 (1987), the lead case interpreting Wis. Stat. § 813.125, the harassment statute. If an injunction fails to meet the criteria in Bachowski, the injunction is "invalid."[14]

¶61 According to the Bachowski case, 139 Wis. 2d at 414-15, upon which the majority openly relies, the proceedings and harassment injunction must meet the following requirements:

I. The petitioner being protected by the injunction must be specific and named;[15]

II. The harassing conduct that is the basis for the injunction must be set forth;[16]

---

[14] Bachowski, 139 Wis. 2d at 414.

[15] Wis. Stat. § 813.125(5)(a)1.-2. (requiring the name of the person who is the alleged victim and the name of the respondent in the petition); see Bachowski, 139 Wis. 2d at 412-13.

[16] See Wis. Stat. § 813.125(5)(a)3. (requiring that the complaining party show "[t]hat the respondent has engaged in harassment with intent to harass or intimidate the petitioner").

The Petition for Temporary Restraining Order and/or Petition and Motion for Injunction Hearing form (form CV-405) asks the complaining party to "[s]tate when, where, what happened, and who did what to whom." This is largely similar to language that the court found to be sufficient notice in Bachowski. The Bachowski court stated: "Thus, it would be insufficient, for example, pursuant to sec. 813.125(5)(a) for a petitioner to simply allege that he or she has been 'harassed or intimidated' by the [defendant]." Bachowski, 139 Wis. 2d at 412-13.

III. The specific harassing acts or conduct to be enjoined must be either identical to or substantially similar to the conduct found to be harassing by the circuit court;[17] and

IV. An injunction must be "specific as to the acts and conduct which are enjoined" such that the defendant has notice of what he or she is prohibited from doing.[18]

I

¶62 To assist the circuit court, I begin with the first Bachowski criterion: the petitioner and the party protected must be specific and named.

¶63 In the instant case, a real issue exists about who the petitioner is and who the protected party is. They need not be the same person.

---

[17] "Only the acts or conduct which are proven at trial and form the basis of the judge's finding of harassment or substantially similar conduct should be enjoined." Bachowski, 139 Wis. 2d at 414.

See also III Wisconsin Judicial Benchbook, Family Actions, Miscellaneous Actions, Harassment FA 18-54 (4th ed. 2011) (similarly stating the injunction "must be tailored to necessities of particular case"). (The Benchbook states that it is not intended that the Benchbooks be cited as independent authority.)

[18] Bachowski, 139 Wis. 2d at 414. See also III Wisconsin Judicial Benchbook, supra note 17, at 18-54 (adhering to Bachowski: "The injunction must be specific as to prohibited acts and conduct so one enjoined may know what actions to avoid.").

Specificity is required because violation of an injunction is a criminal offense.

¶64 The written order names "Board of Regents UW System" as the petitioner. In its oral ruling, the circuit court stated that Decker was "specifically prohibited from contacting or causing any person to contact the UW or its representatives unless they consent in writing" (emphasis added). I agree with the majority opinion that it is "unclear to both Decker and law enforcement who the protected party is."[19]

¶65 The circuit court's injunction appears to include as protected parties between 18 individuals (the individual members of the Board of Regents) and 200,000 or more individuals (the students, staff, and faculty of the university).

¶66 The lack of clarity of the protected party's identity in the circuit court's injunction renders it invalid under the first Bachowski criterion: the protected party is undefined and unknown. The identity of the protected party must be clear from the injunction.

II

¶67 The second Bachowski criterion is that the harassing conduct that is the basis for the injunction must be set forth.

---

[19] See majority op., ¶49 (listing various potential formulations of the protected party from the record in the instant case).

The majority opinion lists other parties that may be "protected parties" under the circuit court's injunction. Majority op., ¶48 n.22.

¶68 Trespass is the gravamen of the harassing conduct used to justify the injunction. Trespass in turn is based on Decker's status as a suspended student.[20]

¶69 The circuit court described the trespasses as the harassing conduct, as follows:

> [T]here are several incidents described as a matter of the record here that Mr. Decker, contrary to the clear terms of the lawful existing order that is established . . . . It specifically says he may not enroll in any UW system institution and may not be present on any campus without the written consent of the chief administrator of that campus. He has done so on several occasions without the written consent of the administration on the particular campus. . . .
>
> And in my view, that constitutes conduct of a sort that is harassing and intimidating.

¶70 According to the circuit court, the harassment was the disruption of a meeting at the Stevens Point campus before Decker's suspension and at least four documented trespasses on university land after Decker was suspended as a student, including additional disruption of meetings. One of the trespasses, leafleting, is not described as being disruptive. See majority op. ¶¶4-5, 39-41.

---

[20] A suspended student, according to the Wisconsin Administrative Code §§ UWS 17.02(16) and UWS 18.11(7)(a), may not be present on any campus "without the written consent of the chief administrative officer" of that campus and "may [not] enter the university lands of any institution without the written consent of the chief administrative officer." According to § UWS 17.02(17), "university land" is defined as "all real property owned by, leased by, or otherwise subject to the control of the board of regents . . . ."

8

¶71 The majority opinion specifically identifies the harassing conduct (which forms the basis for the injunction) as trespassing conduct violating the terms and conditions of Decker's suspension and the Wisconsin Administrative Code as follows:

- Contrary to the terms and conditions of his suspension and the Wisconsin Administrative Code, Decker trespassed on the UW-Oshkosh campus and distributed leaflets at a UW-Oshkosh basketball game. No disruption or adverse consequences are described. Majority op., ¶7.

- Contrary to the terms and conditions of his suspension and the Wisconsin Administrative Code, Decker twice trespassed on the campus of UW-Fox Valley by attending meetings, during which he was disruptive and was forcibly removed by police officers. Majority op., ¶¶8, 11.

- Contrary to the terms and conditions of his suspension and the Wisconsin Administrative Code, Decker trespassed by attending a meeting of the Board of Regents in Madison and was disruptive. Majority op., ¶10.[21]

---

[21] To obtain an order relating to Decker's guns, the circuit court and majority opinion rely on Decker's pre-suspension conduct at Stevens Point of striking the Chancellor's papers and the timing of Decker's purchase of guns. Majority op., ¶42.

9

¶72 According to the record before us, Decker's suspension ended January 1, 2012.

¶73 I do not speculate as to the present status of Decker's suspension. Yet if the suspension no longer exists, any harassing conduct created by "trespass" may also no longer exist.

¶74 When the circuit court crafts its new injunction, it may need to consider whether trespass in violation of Decker's suspension can continue to serve as the basis of harassing conduct.

III

¶75 The third Bachowski criterion is that "[o]nly the acts or conduct which are proven at trial and form the basis of the [circuit court] judge's finding of harassment or substantially similar conduct should be enjoined." Bachowski, 139 Wis. 2d at 414.

¶76 As noted above, the harassing conduct the circuit court found as the basis for the injunction was Decker's trespass as a suspended student and disruption of meetings. As the majority opinion notes, the circuit court's injunction was not limited to the conduct that forms the basis of the circuit court's finding of harassing conduct or similar conduct.[22]

¶77 In crafting a new injunction, the circuit court must limit the enjoined conduct to the acts or conduct that form the basis of the harassment finding or substantially similar

---

[22] Majority op., ¶48 n.22.

10

conduct:  the trespass as a suspended student and the disruption of meetings.

IV

¶78  The fourth <u>Bachowski</u> criterion is that the injunction must be "specific as to the acts and conduct which are enjoined," such that the defendant has notice of what he is prohibited from doing.[23]  Law enforcement also needs clarity in the terms of an injunction in order to enforce the injunction.[24]

¶79  The majority opinion notes the "expansive reach" of the injunction.  Majority op., ¶48 n.22.

¶80  In crafting a new injunction, the circuit court must remedy the defects in the original injunction that the majority opinion details, namely that the injunction fails to be specific about what person or persons Decker may be enjoined from contacting and fails to be specific about what property Decker is enjoined from entering.[25]

---

[23] Injunctions must be specific as to the prohibited acts and conduct in order for the person being enjoined to know what conduct must be avoided.  Disobeying an injunction is a criminal offense.  <u>Welytok v. Ziolkowski</u>, 2008 WI App 67, ¶24, 312 Wis. 2d 435, 752 N.W.2d 359.

[24] Laws must provide "reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent arbitrary and discriminatory enforcement."  <u>City of Madison v. Baumann</u>, 162 Wis. 2d 660, 674, 470 N.W.2d 296 (1991) (internal quotation marks omitted).  Additionally, the statute requires that the injunction must be sent to "the sheriff or to any local law enforcement agency which is the central repository for orders and injunctions and which has jurisdiction over the petitioner's premises."  Wis. Stat. § 813.125(5g).

[25] Majority op., ¶48 n.22.

11

¶81 As stated previously, the injunction is unclear because it can be read to enjoin Decker from contacting 18 individuals or 200,000.[26]

¶82 The injunction is also unclear regarding what property Decker is enjoined from entering. Decker was prohibited from entering "the University of Wisconsin system, all of its campuses, any premises under the control of the Board of Regents."

¶83 The Board of Regents controls 18,000 acres of property, with campuses across 25 counties. The UW has approximately 1,814 buildings covering 60 million square feet of space.[27] UW property extends from UW medical facilities across the state, including doctor's offices and emergency rooms, to conservation tracts and nature preserves, to apartments, to golf courses, and so on.

¶84 How should Decker or law enforcement identify which properties are "controlled by" the Board of Regents?

- The University of Wisconsin Hospital and its medical facilities are run by a separate authority that includes members of the Board of Regents. May Decker

_____

[26] The circuit court in its oral ruling stated that Decker is "specifically prohibited from contacting or causing any person to contact the UW or its representatives unless they consent in writing."

[27] Capital Planning & Budget, University of Wisconsin System Capital Assets, http://www.uwsa.edu/capbud/documents/capbud_description.htm (last visited June 30, 2014).

12

visit his physician who has an office in one of the many university medical facilities across the state?

- May Decker visit a graduate student friend at a UW-managed dormitory or apartment complex?

- May Decker attend a theater production at a UW theater?

- May Decker patronize one of the multiple retail locations of the University of Wisconsin Bookstore?

- May Decker enter property controlled by the University of Wisconsin Foundation?

- May Decker distribute material on or near streets in or near a University campus?

¶85 Thus, neither Decker nor law enforcement can understand what conduct is enjoined, both with regard to persons Decker cannot contact and to real property Decker cannot enter. Without knowing what conduct is enjoined, the circuit court cannot determine whether the enjoined behavior is identical to or substantially similar to the conduct found harassing, namely the third criterion in Bachowski.

¶86 Thus, the injunction is invalid under the fourth Bachowski criterion.

\* \* \* \*

¶87 I agree with the majority opinion that the circuit court's injunction fails to meet the criteria set forth in Bachowski. Under Bachowski, an injunction that fails to meet the criteria is invalid. Thus, the majority opinion in effect vacates the injunction and advises the circuit court to start

over.    Circumstances may have changed significantly since October 24, 2011, when the injunction was issued.

¶88  Before I conclude, let me quickly note the issues that I do not address.

¶89  I do not address whether the conduct at issue meets the statutory definition of harassment under Wis. Stat. § 813.125(1)(b).[28]  "Harassment" is defined as repeated conduct that harasses or intimidates another person "and which serves no legitimate purpose." Wis. Stat. § 813.125(1)(b) (emphasis added).  I do not address the statutory language "serves no legitimate purpose."[29]

------

[28] The statutory definition of "harassment" is problematic; "harassment" is defined as "acts which harass," a form of the very word being defined.

To grant an injunction, the circuit court must find reasonable grounds to believe that the person has engaged in harassment with the intent to harass or intimidate a named party and which serves no legitimate purpose.  Wis. Stat. § 813.125(4)(a)3.

[29] The parties expend considerable effort addressing the "legitimate purpose" statutory language.  The majority opinion takes language out of context from Bachowski, 139 Wis. 2d at 408, treating the case as saying that "intentionally harassing conduct can never serve a legitimate purpose."  Majority op., ¶38.

The majority opinion treats the statutory phrase "which serves no legitimate purpose" as surplusage, contravening our rules of statutory interpretation. See Crown Castle USA, Inc. v. Orion Const. Grp., LLC, 2012 WI 29, ¶13, 339 Wis. 2d 252, 811 N.W.2d 332.

Bachowski, 139 Wis. 2d at 408, treats the inquiry into legitimate purpose as a separate element of harassment, declaring:

14

¶90  I do not address First Amendment issues, although I agree with the court of appeals that there are freedom of speech implications presented by the instant case.[30] Injunctions carry great risks of freedom of speech violations and deserve additional scrutiny from courts.[31]

---

The definition of harassment further requires that the harassing and intimidating acts "serve no legitimate purpose."  This is a recognition by the legislature that conduct or repetitive acts that are intended to harass or intimidate do not serve a legitimate purpose.  Whether acts or conduct are done for the purpose of harassing or intimidating, rather than for a purpose that is protected or permitted by law, is a determination that must of necessity be left to the fact finder, taking into account all the facts and circumstances.

The court of appeals opinion reads Bachowski as stating that conduct can be harassment only if "done for the purpose of harassing or intimidating, rather than for a purpose that is protected or permitted by law." Bd. of Regents-UW Sys. v. Decker, No. 2011AP2902, unpublished slip op., ¶11 (Wis. Ct. App. Jan. 24, 2013).

In Welytok, 312 Wis. 2d 435, ¶¶30-31, the court of appeals viewed the "no legitimate purpose" language as establishing a separate element and concluded that the circuit court found that the defendant was "motivated by one thing and one thing only and that was to harass," that the circuit court "saw through" the defendant's "attempts to manufacture a legitimate purpose," and that the circuit court's finding that no legitimate purpose was intended was supported by the evidence.

[30] A case should be decided on non-constitutional grounds whenever possible. Adams Outdoor Advertising, Ltd. v. City of Madison, 2006 WI 104, ¶91, 294 Wis. 2d 441, 717 N.W.2d 803.

[31] See Madsen v. Women's Health Center, Inc., 512 U.S. 753, 765-66 (1994).  For an overview of the potential impact of civil harassment injunctions on freedom of speech, see Aaron H. Caplan, Free Speech and Civil Harassment Orders, 64 Hastings L.J. 781 (2013).

15

¶91  For the reasons set forth, I write separately.

---

The majority opinion intimates that its injunction is akin to a "time, place, and manner" restriction that does not offend the First Amendment.  Majority op., ¶44.  The circuit court's overbroad injunction bans every manner of "conduct" (which includes speech) by Decker at all times and in all places controlled by the university.

16

APPENDIX

STATE OF WISCONSIN, CIRCUIT COURT, DANE COUNT

☐ Amended

**INJUNCTION – Harassment (30711)**
(Order of Protection)
Case No. 11CV4619

For Official Use

OCT 24 2011

STATE OF WISCONSIN
CIRCUIT COURT FOR DANE COUNTY

## PETITIONER/PROTECTED PERSON

| First | Middle | Last |
|---|---|---|

**BOARD OF REGENTS UW SYSTEM**

Name of Protected Person (if different than Petitioner)

Date of Birth of Petitioner/Protected Person

Date of Birth of Protected Person (if different than Petitioner)

-VS.-

## RESPONDENT/DEFENDANT

| First | Middle | Last |
|---|---|---|

**JEFFREY S DECKER**

| SEX | RACE | DOB | HT | WT |
|---|---|---|---|---|
| M | WHITE | 3-23-1979 | 5'10 | 150 |

| EYE COLOR | HAIR COLOR |
|---|---|
| BLUE | BROWN |

Respondent's/Defendant's Street Address, City, State, Zip
**1119 OTTER AVE**
**OSHKOSH WI 54901**

Please specify Protected Person's relationship(s) to Respondent/Defendant:

☐ spouse  ☐ cousin  ☐ adoptive parent
☐ former spouse  ☐ sibling  ☐ grandparent
☐ person in dating relationship  ☐ parent  ☐ child (biological/adoptive/step)
☐ current or former live-in relationship  ☐ step parent
☐ Other: (be specific) _____

Respondent's/Defendant's Distinguishing Features (such as scars, marks or tattoos)

☐ None known.

**CAUTION:** (Check all that apply)

☑ Respondent/Defendant has access to weapon(s). Type of weapon(s): *1 handgun, 3 long guns*
Location of weapon(s): *At residence*
☐ Weapon(s) were involved in an incident (past or present) with me. *1 other handgun purchased 10/18/11*

**THE COURT FINDS:**
Findings are on the following page(s) of this injunction.

**THE COURT ORDERS:**
Orders are on the following page(s) of this injunction.

**THIS INJUNCTION SHALL BE EFFECTIVE UNTIL OCTOBER 24, 2015**
Not to exceed 4 years

**NOTIFICATIONS/WARNINGS TO RESPONDENT/DEFENDANT:**
This order shall be enforced, even without registration, and is entitled to full faith and credit in every civil or criminal court of any state, the District of Columbia, any U.S. Territory, and may be enforced by Tribal Lands (18 U.S.C. Section 2265; Wis. Stats. 813.128). Crossing state, territorial, or tribal boundaries to violate this order may result in federal imprisonment (18 U.S.C. Section 2262).

Federal law provides penalties for, and you may be prohibited from possessing, transporting, shipping, receiving or purchasing a firearm, including, but not limited to, a rifle, shotgun, pistol, revolver, or ammunition, pursuant to 18 U.S.C. 922(g)(8). Additional notifications/warnings are on the following page of this injunction.

Violation of this order shall result in immediate arrest and is punishable by imprisonment not to exceed 90 days or a fine not to exceed $1,000, or both, and payment of filing and service fees.

**Only the court can change this order.**

CV-407, 10/07 Injunction (Order of Protection - Harassment)  §813.125, Wisconsin Statutes
This form shall not be modified. It may be supplemented with additional material.
Page 1 of 2

1

## THE COURT FINDS:

1. The petitioner/protected person has filed a petition alleging harassment.

2. This court has personal and subject matter jurisdiction. The respondent/defendant has been properly served and had an opportunity to be heard.

3. There are reasonable grounds to believe that the respondent/defendant has engaged in harassment with intent to harass or intimidate the petitioner/protected person.

4. There ☑ is ☐ is not   clear and convincing evidence that the respondent/defendant may use a firearm to cause physical harm to another or to endanger public safety.

## THE COURT ORDERS:

☒ 1. The respondent/defendant ceases or avoid the harassment of petitioner/protected person.

☑ 2. The respondent/defendant avoids the residence and any premises temporarily occupied by the petitioner/protected person.

☑ 3. The respondent/defendant is specifically prohibited from contacting or causing any person other than a party's attorney or law enforcement officer to contact the petitioner/protected person unless the petitioner/protected person consents in writing. Contact includes: contact at petitioner/protected person's home, work, school, public places, in person, by phone, in writing, by electronic communication or device, or by any other means.

☐ 4. The respondent/defendant is prohibited from the following: *(List specific prohibited conduct.)*

_____

_____

_____

☐ 5. NOTE: (The firearms *restriction can be ordered only if the court has made the finding in #4, above, "that the respondent/defendant may use a firearm to cause physical harm to another or to endanger public safety.")*

The respondent/defendant is prohibited from possessing a firearm until the expiration of this injunction. Possession of a firearm is a Class G Felony punishable by a fine not to exceed $25,000 or imprisonment not to exceed 10 years, or both. A respondent/defendant may retain a firearm only if the respondent/defendant is a peace officer and only to the extent required by the peace officer's employer. The respondent/defendant shall immediately surrender any firearm(s) that he or she owns or has in his or her possession to:
     ☐ the sheriff of this county.
     ☑ the sheriff of the county in which the respondent/defendant resides: *Winnebago County Sheriff's Dept.*
     ☐ another person: _____
                     Name and Address

☐ 6. Other: _____

☐ The respondent/defendant was present in court and personally served with a copy of this order.

**DISTRIBUTION:**
1. Original - Court
2. Petitioner/Protected person
3. Respondent/Defendant
4. Law Enforcement

**BY THE COURT:**

_John Markson_ (signature)
_____
Circuit Court Judge/Circuit Court Commissioner

Honorable John W. Markson
_____
Name Printed or Typed

OCTOBER 24, 2011
_____
Date

CV-407, 10/07 Injunction (Order of Protection - Harassment)      §813.125, Wisconsin Statutes
This form shall not be modified. It may be supplemented with additional material.
Page 2 of 2

¶92 DAVID T. PROSSER, J. *(concurring).* The majority opinion makes a powerful case for the issuance of a harassment injunction against Jeffrey Decker (Decker). Decker's campaign regarding the use of student segregated fees in the University of Wisconsin System has been self-defeating because his tactics alienate people who might otherwise share his concerns. Whatever Decker's message is, it is completely overshadowed by his tactics, which have crossed the line and become unreasonable. I concur in the majority opinion because I agree that something had to be done.

¶93 I also agree with the majority (and with the concurrence of the Chief Justice) that the circuit court's injunction is too broad and must be redone. If a remand for revision were not part of the majority opinion, I would feel obligated to dissent.

¶94 Having explained my reasons for concurrence, I must register my reservations about the interpretation of Wis. Stat. § 813.125.

¶95 In my view, this statute was never intended to cover institutions as well as natural persons. It was intended to address a wide variety of harassment problems when people have to deal with the irrational conduct of other people. Thus, the remedies that must be afforded to an abused spouse, and may be afforded to a corporate officer or a member of the University of Wisconsin Board of Regents <u>as an individual</u>, are not the same as the remedies that may be afforded to everyone who is part of a corporation or an educational institution.

¶96 Once the court determines that the broad definition of "person"[1] applies to an institution as a victim, then necessarily it also applies to an institution as a perpetrator. I am confident that many people believe some institution, association, or body politic or corporate is engaging in a course of conduct to harass or intimidate them in a manner that serves no legitimate purpose.

¶97 The statute has been interpreted more broadly than I would read it in <u>Village of Tigerton v. Minniecheske</u>, 211 Wis. 2d 777, 565 N.W.2d 586 (Ct. App. 1997), and now in this case. But the legislature has failed to give much guidance on how judges should apply the statute in these cases. This lack of guidance is bound to spawn future controversy.

¶98 I respectfully suggest that the legislature review the language and effectiveness of all the specialized statutes on injunctions and restraining orders in Wis. Stat. ch. 813 and consider adopting a new statute for "persons" who are not people.

¶99 For the foregoing reasons, I respectfully concur.

---

[1] Wis. Stat. § 990.01(26) ("'Person' includes all partnerships, associations and bodies politic or corporate.").