# 2022 WI APP 17

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.: 2020AP1775

†Petition for Review Filed

Complete Title of Case:

**NANCY KINDSCHY,**

      **PETITIONER-RESPONDENT,**

    **V.**

**BRIAN AISH,**

      **†RESPONDENT-APPELLANT.**

| | |
|---|---|
| Opinion Filed: | March 8, 2022 |
| Submitted on Briefs: | October 12, 2021 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Gill, JJ. |
|    Concurred: | |
|    Dissented: | |

| | |
|---|---|
| Appellant<br>ATTORNEYS: | On behalf of the respondent-appellant, the cause was submitted on the briefs of *Joan M. Mannix* of *Thomas More Society*, pro hac vice, and *Dudley A. Williams* of *Buting, Williams & Stilling, S.C.*, Chicago, Illinois. |
| Respondent<br>ATTORNEYS: | On behalf of the petitioner-respondent, the cause was submitted on the brief of *Diane M. Welsh* and *Beauregard W. Patterson* of *Pines Bach LLP*, Madison. |

**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**March 8, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* **WIS. STAT. § 808.10 and RULE 809.62.**

| | |
|---|---|
| **Appeal No.** **2020AP1775** | Cir. Ct. No. 2020CV40 |
| **STATE OF WISCONSIN** | **IN COURT OF APPEALS** |

NANCY KINDSCHY,

    PETITIONER-RESPONDENT,

V.

BRIAN AISH,

    RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Trempealeau County: RIAN RADTKE, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

¶1 GILL, J. Brian Aish appeals from a circuit court order granting Nancy Kindschy a harassment injunction against him. Between 2019 and 2020, Aish protested at the Blair Health Center (hereinafter, "Blair Clinic") where Planned Parenthood provided services and Kindschy worked as a nurse practitioner. The

circuit court concluded that Aish's actions toward Kindschy during his protests constituted "harassment" as defined by WIS. STAT. § 813.125 (2019-20).[1] In particular, the court found that Aish's statements—such as "bad things happening to you and your family" and "you're lucky if you make it home safe"—were designed to intimidate Kindschy and did not serve a legitimate purpose. The court issued an injunction barring Aish, until September 9, 2024, from harassing Kindschy and requiring him to avoid Kindschy's residence or any premises temporarily occupied by her, including the Blair Clinic.

¶2 Aish contends the circuit court erred because the evidence does not support a conclusion that his actions met the statutory definition of "harassment" under WIS. STAT. § 813.125. Specifically, Aish asserts that any comments he made to Kindschy about "bad things" generally happening to her do not meet the definition of "harassment" because the comments "referr[ed] to dangers everyone knows exist" and did not "suggest[] that Aish might play a role in any bad thing that might happen to Kindschy or her family."

¶3 Aish further argues that the circuit court erred by concluding that Aish's actions lacked a "legitimate purpose" under WIS. STAT. § 813.125. Aish maintains that the "legitimate purpose" constituted protected expression meant to influence Kindschy to leave her employment in furtherance of his goal of shutting down Planned Parenthood and to proselytize. Finally, and relatedly, Aish asserts that the court's injunction was insufficiently tailored in scope, thus violating the First Amendment by effectively banning him from ever protesting against Planned Parenthood at the Blair Clinic.

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

2

¶4      We conclude the circuit court properly determined that Aish's conduct constituted harassment as defined in the statute. The record contains ample evidence to support the court's finding that Aish's actions toward Kindschy were without a legitimate purpose. The evidence established a pattern of repeated actions over the course of months that demonstrated Aish's purpose was to scare and intimidate Kindschy, including evidence that Aish threatened Kindschy and her family on more than one occasion. Although Aish claims that he intended only to influence Kindschy to leave her employment, to shut down Planned Parenthood, and to proselytize, his comments and behavior were harassing to Kindschy, making his actions unprotected speech. To protect against such harassment, the court permissibly tailored the injunction order to prevent Aish from being at Blair Clinic when Kindschy is there. An individual's ability to protest abortion, like any other subject, is not unlimited. Accordingly, we reject Aish's arguments and affirm the order.

## BACKGROUND

¶5      Kindschy petitioned for a harassment injunction against Aish on March 10, 2020, claiming that Aish had engaged in threatening behavior over a period of time that caused her to fear for her safety. The following facts were adduced during a two-day injunction hearing at which the circuit court heard testimony from Kindschy, two of Kindschy's co-workers, Aish, and Aish's wife.

¶6      Kindschy has worked as a nurse practitioner at various family planning clinics. Since 2019, Planned Parenthood has provided family planning services at the Blair Clinic where Kindschy works. Abortions, however, are not performed at that facility.

¶7      Since 2014, Aish has protested at several family planning clinics where Kindschy has worked. Early interactions between Aish and Kindschy were not confrontational, consisting of conversations regarding Aish and his beliefs. In the fall of 2019, however, Aish's behavior toward Kindschy changed significantly. Kindschy testified that Aish became more aggressive and confrontational toward her, and he seemed to single her out while protesting.

¶8      On October 8, 2019, while standing three to four feet from Kindschy's car as she was leaving the Blair Clinic, Aish stated to Kindschy: "You have time to repent. You will be lucky if you don't get killed by a drunk driver on your way home. Bad things are going to start happening to you and your family." Approximately one week later, Kindschy testified that Aish approached her vehicle as she left the Blair Clinic parking lot and said to her in an angry, cold, and loud tone, "you have blood on your hands." Thereafter, Kindschy saw Aish receive a citation for trespassing, which Kindschy believed angered him even more. Kindschy was frightened of Aish's aggressive and angry behavior. On another date in October when Kindschy was leaving work, Aish "ran out into the road after [Kindschy] pumping his anti-abortion sign into [her] car window within inches of it."

¶9      In February the following year, Aish continued to single out Kindschy from her fellow employees. On February 18, 2020, as Kindschy left work, Aish followed her directly to her vehicle. Aish stated that Kindschy would be "lucky" if she got home safely, she could possibly be killed, and that bad things were going to start happening to her family. Video footage of this confrontation was introduced into evidence. A week later, Aish accused Kindschy of lying to the authorities about him and told her that she would be "lucky" to make it home safely, which caused her "great concern."

¶10     The circuit court found that Aish repeatedly committed acts that intimidated and harassed Kindschy.  The court further found that Aish's repeated statements that Kindschy would be "lucky" if she made it home safely and that bad things would start happening to her family were threatening.  The court also found that Aish used intimidation with an intent to scare Kindschy into quitting her employment with the Blair Clinic.  The court issued an injunction barring Aish from harassing Kindschy and requiring him to avoid her residence or any premises temporarily occupied by her, including the Blair Clinic, until September 9, 2024.

¶11     Aish filed a motion for reconsideration, arguing that the circuit court committed manifest error "by determining that Mr. Aish's right to assemble and his right to freedom of expression under the First Amendment was not a legitimate purpose."  The court denied the motion, and Aish appeals.  Additional facts will be included as relevant to the discussion.

## DISCUSSION

¶12     Under WIS. STAT. § 813.125(4), a circuit court may grant an injunction ordering a person to cease or avoid the harassment of another if it finds "reasonable grounds to believe that the respondent has engaged in harassment with intent to harass or intimidate the petitioner."  *See* § 813.125(4)(a)3.  This finding presents a mixed question of fact and law.  ***Board of Regents-UW Sys. v. Decker***, 2014 WI 68, ¶20, 355 Wis. 2d 800, 850 N.W.2d 112.  A reviewing court will uphold the circuit court's factual findings unless they are clearly erroneous, but whether reasonable grounds exist to grant the injunction is a question of law that we review de novo.  ***Id.***  As relevant to this case, § 813.125(1)(am)4.b. defines "harassment" to mean, "[e]ngaging in a course of conduct or repeatedly committing acts which harass or intimidate another person and which serve no legitimate purpose."

5

### A. Aish repeatedly committed acts that harassed and intimidated Kindschy.

¶13     Aish first argues that the circuit court erred by finding that his actions were harassing or intimidating.  Aish contends there was no evidence—and no finding by the court—that he threatened Kindschy or otherwise suggested that he would have a role in any negative thing that might happen to Kindschy or her family.  Additionally, Aish contends the court made an "unprecedented" finding that Aish's statements referring to existing known dangers in the world constitute harassing and intimidating conduct within the scope of WIS. STAT. § 813.125.  Aish contends that the concept of intimidating someone implicitly requires that one acts with the purpose of creating "timidity or fear of the person doing the alleged intimidating."  Aish argues the video in evidence shows that he did not engage in conduct to intimidate or harass Kindschy.

¶14     In making his arguments, Aish ignores our standard of review, as well as the circuit court's factual findings and the record supporting them.  In particular, the circuit court determines credibility, and we will not second-guess its credibility determinations.  *See **Nicholas C.L. v. Julie R.L.***, 2006 WI App 119, ¶23, 293 Wis. 2d 819, 719 N.W.2d 508.  In ***Welytok v. Ziolkowski***, 2008 WI App 67, ¶35, 312 Wis. 2d 435, 752 N.W.2d 359 (citation omitted), this court noted that to "'harass' means 'to worry and impede by repeated attacks, to vex, trouble or annoy continually or chronically, to plague, bedevil or badger, and 'intimidate' means 'to make timid or fearful.'"  Here, the court specifically found that Aish directed his comments toward Kindschy.  It further found that Aish intimidated Kindschy by repeatedly making threats to Kindschy and her family.

¶15     Aish argues there is evidence contrary to the circuit court's findings, but he does not argue those findings themselves are clearly erroneous.  Here, the

evidence clearly supports the court's findings that Aish harassed Kindschy and intimidated her. Evidence introduced at the injunction hearing showed that Kindschy had known Aish as a protestor for six years. Earlier in their interactions, Aish was respectful, spoke nicely to Kindschy, discussed his beliefs and mission, and would tell her to have a nice day.

¶16 Starting October 8, 2019, however, Aish's demeanor and message changed. Kindschy testified that she was very frightened not only by Aish's proximity and his words, but by the change in his demeanor. Aish's changed demeanor, tone and message continued through February 2020, where they even intensified. Aish began to state that Kindschy would be "lucky" if she got home safely, that she could be killed, and that bad things were going to start happening to her family. On one occurrence, Aish accused Kindschy of lying to the authorities about him and again threatened that she would be lucky if she were able to make it home safely. As a result, Kindschy testified that she felt scared and threatened by Aish.

¶17 Aish claims that he was merely "drawing [Kindschy's] attention to the reality of commonplace but serious dangers" and that there "was no explicit or suggested causal relationship to Aish." These assertions, however, are contrary to both the record and the circuit court's findings. Kindschy testified that she was scared of Aish as a result of the comments he made to her, not that she was suddenly fearful that she or her family might be the victim of some wholly unrelated accident. In fact, one of Kindschy's co-workers testified that Kindschy appeared bothered and scared, and she would head straight for her car "as quickly as possible" to avoid Aish. The record also shows that the Blair Clinic added a security guard and cameras to address Kindschy's concerns about Aish.

7

¶18    Although Aish argues that the video evidence does not support a determination that he was threatening or intimidating Kindschy, the circuit court found to the contrary based on the testimony of Kindschy and her colleagues, which the court found to be credible. Aish has not shown that any of the court's factual findings or credibility determinations are clearly erroneous, even in light of the limited video evidence. Based on those findings, the court correctly determined that Aish's conduct was harassing or intimidating. *See* WIS. STAT. § 813.125(1)(am)4.b.

¶19    This evidence established a pattern of repeated actions that frightened Kindschy. Aish approached Kindschy repeatedly over the course of several months, and during each interaction, he berated her with veiled threats suggesting harm toward both Kindschy and her family, and he falsely accused her of actions she did not commit. On this record, the circuit court properly determined that Aish engaged in a pattern of harassing or intimidating conduct within the meaning of WIS. STAT. § 813.125(1)(am)4.b.

### B. Aish's conduct was not for a legitimate purpose.

¶20    Aish next asserts that the circuit court found his comments were made "in furtherance of two First Amendment protected goals"—to influence Kindschy to leave her work with the Blair Clinic, and to proselytize. Aish therefore asserts

> [t]he Court manifestly erred in interpreting and applying the statute to reach protected expression and in determining Kindschy has a greater interest in not hearing words that might cause her to contemplate negative realities than Aish has in exercising his First Amendment rights and expressing his pro-life, anti-Planned Parenthood, Christian viewpoint.

¶21    Aish argues the circuit court's decision is contrary to controlling precedent—specifically, our supreme court's decision in ***Bachowski v. Salamone***, 139 Wis. 2d 397, 407 N.W.2d 533 (1987). The ***Bachowski*** court held that "[t]he

intent requirement and the phrase 'no legitimate purpose' make clear that protected expression is not reached by the statute. It is not directed at the exposition of ideas but at oppressing repetitive behavior which invades another's privacy interests in an intolerable manner." *Id.* at 411 (citation omitted). Aish appears to argue that his comments at issue in this case constituted protected expression, and that the court therefore erred by concluding they lacked a legitimate purpose.

¶22 Aish's argument that the circuit court found he did not engage in harassment with the intent to harass Kindschy is without record support. In fact, the court specifically found that "Aish engaged in harassment with intent to harass or intimidate" Kindschy. The court found that Aish intended to use intimidation and scare tactics to pressure Kindschy to quit her job, and that Aish's actions were for the purpose of scaring Kindschy. The court noted that this conduct is not protected speech, regardless of any relation it has to otherwise protected speech. Furthermore, the court refused to accept Aish's claim that his actions were done out of a concern for Kindschy or her spirituality. The court declined to find a legitimate purpose in intimidating someone to get them to leave their job because the person making the intimidating statements does not agree with victim's employment or the work that the victim's employer performs.

¶23 Further, Aish's argument that his comments are protected by the First Amendment is misplaced. Although Aish correctly points out that his intent was to influence Kindschy to leave her employment and to proselytize, this notion overlooks the circuit court's finding that he also intended to frighten Kindschy. Harassing behavior cannot be transformed into nonharassing, legitimate conduct simply by labeling it as a political protest. Our supreme court rejected that notion in *Decker*, explaining:

> Taken to its logical conclusion, this argument suggests that if an individual has both a legitimate and an illegitimate purpose, the legitimate purpose automatically protects the individual's conduct from being enjoined. Put another way, according to Decker's logic, conduct done with both the purpose of protesting and the purpose of harassing cannot constitute harassment. This is a senseless argument that flatly contradicts our holding in **Bachowski** that intentionally harassing conduct can never serve a legitimate purpose.

*Decker*, 355 Wis. 2d 800, ¶38 (emphasis omitted). Here, Aish cannot shield his harassing conduct from regulation by labeling it a "protest." Consistent with *Decker*, because at least some of Aish's conduct unlawfully harassed Kindschy, it may be enjoined under WIS. STAT. § 813.125.

¶24 Therefore, we conclude that the testimony of Kindschy and her colleagues provided reasonable grounds to believe that Aish engaged in a course of conduct that harassed or intimidated Kindschy and served no legitimate purpose, and that he engaged in that conduct with the intent to harass or intimidate Kindschy. We agree with the circuit court that Aish's pattern of behavior was sufficient to satisfy the statutory standard.

### C. The injunction does not violate the First Amendment.

¶25 As discussed, Aish asserts that he protested at the Blair Clinic in opposition to abortion and Planned Parenthood. Aish further contends that he tries to spread a pro-life, Christian message, which is a matter of public concern. The circuit court's order now prohibits his presence at the Blair Clinic when Kindschy is there. Although the court noted that Aish could be present at the Blair Clinic when Kindschy is not there, Planned Parenthood only provides counseling at the clinic on Tuesdays, which is when Kindschy works there. Thus, Aish asserts that the injunction effectively prevents him from protesting at the Blair Clinic. Aish

therefore argues that the injunction is invalid because it "impermissibly effectively completely bans Aish from exercising his First Amendment right to protest" at the Blair Clinic.

¶26     As alluded to above, it is well established that an individual's ability to protest is not unlimited. *Decker*, 355 Wis. 2d 800, ¶44. Likewise, the right to protest against abortions is not unfettered. The United States Supreme Court upheld a Colorado statute that banned anti-abortion protestors from approaching patients and employees entering or leaving clinics. *Hill v. Colorado*, 530 U.S. 703, 707-15 (2000). Additionally, in *American Life League, Inc. v. Reno*, 47 F.3d 642, 645-48 (4th Cir. 1995), the Fourth Circuit upheld the constitutionality of the Freedom of Access to Clinic Entrances Act of 1994, a federal law enacted to limit anti-abortion activists who had become increasingly violent in their attempts to shut down or disrupt abortion clinic operations.

¶27     Furthermore, we are not persuaded by Aish's reliance on *Snyder v. Phelps*, 562 U.S. 443 (2011), for the contention that any conduct done in the name of an anti-abortion protest is public in nature and therefore subject to special protection. To be clear, Aish was not protesting at an abortion clinic. His efforts were not geared toward changing the minds of the general public or legislators. Rather, Aish was attempting to get Kindschy specifically to change her mind and to resign her position as a nurse practitioner at the Blair Clinic. Stated differently, Aish was attempting to convince a private citizen to end her employment with a private organization, by making comments that instilled fear and trepidation. Aish's efforts were almost entirely personal—and not public—in nature.

¶28     We also reject Aish's claim that the injunction was insufficiently tailored. In order to protect Kindschy from Aish's harassment, the circuit court

ordered that he not be present where Kindschy worked. Aish can protest at the Blair Clinic anytime Kindschy is not present. The fact that Kindschy works on the only day Planned Parenthood provides counseling at the Blair Clinic—thus preventing Aish from protesting Planned Parenthood's work there—does not mean the injunction was insufficiently tailored. Aish can still protest at that site whenever Kindschy is not present, or at any other clinic or Planned Parenthood site.

¶29    In sum, the circuit court's order enjoining Aish from unlawfully harassing Kindschy at the Blair Clinic did not violate Aish's First Amendment rights. The court correctly determined that the First Amendment does not uphold a right to threaten or scare people in order to sway their religious beliefs or induce them to quit their jobs. The court properly concluded that Aish had engaged in harassment that was not protected by the First Amendment. For the foregoing reasons, we reject Aish's challenges to the order granting a harassment injunction.

*By the Court.*—Order affirmed.