COURT OF APPEALS
DECISION
DATED AND FILED

September 7, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2285**

STATE OF WISCONSIN

Cir. Ct. No. 2018CV606

IN COURT OF APPEALS
DISTRICT II

PETITIONER,

PETITIONER-RESPONDENT,

V.

DAVID FRANKE,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Kenosha County: DAVID M. BASTIANELLI, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. David Franke appeals an order granting a harassment injunction against him.   Franke claims:    (1) the evidence was insufficient to support the order; (2) the injunction is overly broad in scope; and (3) the circuit court erroneously denied his request for additional discovery.   We affirm.

## BACKGROUND

¶2     The Petitioner and Franke were neighbors in the Maple Ridge Subdivision in Kenosha, Wisconsin.   On May 22, 2018, the Petitioner sought a temporary restraining order and harassment injunction against Franke under WIS. STAT. § 813.125 (2019-20).[1]    A court commissioner granted the temporary restraining order on May 22, 2018.   The injunction hearing began on June 4, 2018, but had to be continued in order to complete the testimony.   The hearing was ultimately continued several times over the next eight months.

¶3     During the pendency of the proceedings, Franke deposed six individuals, including the Petitioner, three of the Petitioner's neighbors, the Petitioner's pastor, and a parishioner at the Petitioner's church.   The Petitioner and two witnesses filed motions to prohibit further depositions and discovery.   On

---

[1] On March 26, 2018, Franke petitioned for a temporary restraining order and harassment injunction against the Petitioner.  Franke's case was consolidated with the Petitioner's.  The court commissioner denied Franke's motion for a temporary restraining order and injunction.  The circuit court on its de novo review affirmed.  Franke does not contest this ruling on appeal. Accordingly, we do not address it. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) (issue raised in the circuit court but not on appeal deemed abandoned).

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

2

July 27, 2018, the court commissioner ordered that no further discovery be had and quashed the notice of depositions.

¶4      The last hearing was on February 12, 2019. On that date, the court commissioner granted the Petitioner a four-year injunction, which barred Franke from, among other things, contacting the Petitioner or entering the Maple Ridge Subdivision until February 12, 2023.

¶5      Franke moved for a de novo hearing before the circuit court and renewed his request for additional discovery. At a hearing on the motion, Franke asked the circuit court for "a scheduling order … similar to other cases, naming of witnesses, taking some depositions." The circuit court orally denied Franke's motion for additional discovery and set the injunction hearing for August 26, 2019.

¶6      Several witnesses testified at the August 26 hearing. Franke told the circuit court that he met the Petitioner in 2007 and that the families would socialize with each other. According to Franke, the Petitioner first told him in 2008 not to come to her house anymore, but would then change her mind. Franke stated that, in November of 2010, the Petitioner told Franke to "go away again[,]" but they would still do things together as families. During this time, Franke also went to the cemetery where the Petitioner's deceased husband was buried and placed quarters on the burial plot. Franke testified that he did this from 2008 to 2011 to make visiting the burial plot a positive experience for the Petitioner's children.

¶7      Franke stated that in mid-to-late 2013, the Petitioner made it clear that she did not want to have contact with him. Franke claimed that he did not have contact with the Petitioner between 2013 and 2017, with the exception of one

occasion in 2014 when he saw the Petitioner slip and fall while mowing her lawn. Franke told the circuit court that he tried to talk to the Petitioner about it, but she "just blew me off[,]" so he put a note in the Petitioner's mailbox offering to mow her lawn. When Franke did not hear from the Petitioner, he mowed the Petitioner's lawn.

¶8   On cross-examination, Franke testified that he left a pie in the Petitioner's doorway in late January or early February of 2013 or 2014. The Petitioner threw the pie in a snowbank uneaten. Franke also attended the Petitioner's children's swim meet, even though Franke knew the Petitioner did not want to have anything to do with him. According to Franke, he found the location online and went to the swim meet because he had a relationship with the Petitioner's children. When the Petitioner saw Franke at the swim meet, she turned the other way and did not talk to him.

¶9   Franke moved to Neenah, Wisconsin, in September of 2017. Franke said that, after he moved to Neenah, he attended Saturday evening church services at the Lord of Life Lutheran Church in Kenosha two or three times. During those services, the Petitioner sang in the band. Franke admitted that he emailed the pastor at the Lord of Life Lutheran Church about the Petitioner and that he was "asked to stop going to that church[.]"

¶10   After Franke moved, he also visited the Maple Ridge Subdivision approximately eight times to visit friends or walk around the block "because it brought back just wonderful, positive memories[.]" Franke said that during a visit in February of 2018, he parked his truck on a dead-end street near the Petitioner's house because his truck would be parked for a long time, and he wanted to avoid the snow.

4

¶11     The Petitioner also testified. She told the circuit court that she was friends with Franke, but decided to end the friendship because she had a new job and did not "have time for his constant showing up at my house to talk." When the Petitioner told Franke that she did not have time, Franke would become angry and yell. Franke would then "flip a switch" and try to talk to her.

¶12     The Petitioner also testified about the contacts with Franke underlying the petition for the harassment injunction. According to the Petitioner, Franke told her that he put quarters on her deceased husband's burial plot. The Petitioner did not tell Franke where her husband's burial plot was or ask him to go to the burial plot for any reason. When the Petitioner went to the grave with her children, she would pick up the quarters so that her children would not be distracted by them. Franke also went to her children's swim meet in 2012, after the Petitioner told Franke that she did not want him there. According to the Petitioner, when Franke showed up and tried to talk to her, the Petitioner turned and walked the other way.

¶13     The Petitioner stated that she made it clear to Franke in a series of emails from January to August of 2013 that she wanted Franke to leave her alone. In addition to telling Franke to "leave me and my family alone[,]" the Petitioner told Franke in the emails to "[g]o away" and that she did not "want to 'interact' with" Franke. When Franke kept emailing her, the Petitioner blocked Franke's emails because Franke "wouldn't listen[.]" The Petitioner also blocked Franke's cell phone number because Franke would call her several times in a row, and if the Petitioner did not answer, he would leave long voicemail messages.

¶14     The Petitioner testified that Franke put birthday cards for her children in the Petitioner's mailbox after 2013. Additionally, Franke sent a letter

to the Petitioner on May 19, 2014, stating that he did not know how to communicate with the Petitioner and that he was doing her a favor by picking up dog feces on her lot. In the letter, Franke wrote that he was no longer going to pick up the dog feces on her lot.

¶15 The Petitioner told the circuit court that Franke walked up to her when she was mowing her lawn, but that she "waived him away, ignored him[.]" According to the Petitioner, Franke then put a letter in her mailbox, which she returned unopened. When she was away, Franke mowed her lawn. The Petitioner went to Franke's house and told him not to mow her lawn. According to the Petitioner, Franke followed her into her driveway and would not stop ringing her doorbell, so she called the police.

¶16 The Petitioner testified that while she and her daughter were waiting for the school bus in their minivan at the bottom of the driveway, Franke walked up and started shaking his finger and yelling. According to the Petitioner, she turned up her radio, locked the doors, and tried to ignore Franke. Franke did not leave until the school bus showed up.

¶17 The Petitioner stated that in February of 2018, she looked out her bedroom window one morning and saw Franke's truck parked on the dead-end street near her house. She told the court that it is not common for neighbors to park on the dead-end street when snow is anticipated because the snowplow pushes snow there. The Petitioner said that she felt bothered by Franke's truck because Franke would not leave her alone, and Franke likes his presence to be known, especially if someone does not want him around.

¶18 The Petitioner's daughter testified that in 2013 or 2014, Franke came up to the Petitioner's car while they were waiting for the school bus and "started

6

pounding and screaming." According to the Petitioner's daughter, her mother backed up the driveway and turned the radio up, but Franke "just kept pounding and screaming at the window." The Petitioner's daughter also testified that in 2017 or 2018, Franke attended several church services at the Lord of Life Lutheran Church. During the services, Franke would follow the Petitioner with his eyes and watch the Petitioner for ten seconds to several minutes. According to the Petitioner's daughter, Franke would also slowly walk past where they were seated.

¶19 Jeffrey Wamboldt, a parishioner at the Lord of Life Lutheran Church and crime prevention officer, testified that in early 2018 he observed Franke watch the Petitioner throughout a church service for twenty to thirty seconds at a time. After the service, Wamboldt told Franke that he was scaring the Petitioner and asked Franke to "not be where" she is.

¶20 Carrie Newman, the Petitioner's neighbor, testified that prior to the summer of 2017, she observed Franke standing at the end of the Petitioner's driveway with his hands on his hips and staring at the Petitioner's house or lingering on a dead-end street by the Petitioner's house for a few minutes at least once a day. Newman also saw Franke in the summer of 2017 in Newman's yard with a video camera. Franke used the video camera to take a still shot of the Petitioner and her children at the end of the Petitioner's driveway.

¶21 After considering all of the evidence, the circuit court found that the Petitioner had shown reasonable grounds to believe that Franke intentionally engaged in a course of conduct which harassed or intimidated the Petitioner and which served no legitimate purpose. Accordingly, in a written order, it continued the injunction against Franke that the commissioner had issued.

7

## DISCUSSION

### A.  *Evidence of Harassment*

¶22  Franke claims that there is insufficient evidence that he harassed the Petitioner for two reasons:  (1) the circuit court made erroneous findings of fact; and (2) his actions had a legitimate purpose.  We address each claim in turn.

¶23  "[T]o grant an injunction under WIS. STAT. § 813.125, the circuit court must find 'reasonable grounds to believe that the respondent has engaged in harassment with intent to harass or intimidate the petitioner.'"  ***Board of Regents-U.W. Sys. v. Decker***, 2014 WI 68, ¶20, 355 Wis. 2d 800, 850 N.W.2d 112 (quoting § 813.125(4)(a)3.  "This presents a mixed question of fact and law." ***Welytok v. Ziolkowski***, 2008 WI App 67, ¶23, 312 Wis. 2d 435, 752 N.W.2d 359. We "will uphold the factual findings of the circuit court unless they are clearly erroneous." ***Decker***, 355 Wis. 2d 800, ¶20.  "We independently review the circuit court's conclusion, based on the established facts, whether such reasonable grounds exist." ***Welytok***, 312 Wis. 2d 435, ¶23.  As relevant to this case, § 813.125(1)(am)2 defines harassment as "[e]ngaging in a course of conduct or repeatedly committing acts which harass or intimidate another person and which serve no legitimate purpose."

¶24  In this case, the circuit court made extensive findings to support its conclusion that Franke harassed the Petitioner.  The court first considered the Petitioner's requests to Franke to leave her alone.  It reviewed Franke's testimony that, as early as 2008, the Petitioner told Franke that she did not want to maintain a friendship.  It noted that Franke testified the Petitioner would change her mind and that they would still do things together as families.  The court found that the

Petitioner told Franke in 2013 that she did not want to have contact with Franke and "appeared serious about it."

¶25 The circuit court also considered the Petitioner's testimony that she had been friends with Franke, but that when she started a new job she did not have time to talk to Franke, who would show up at her house unannounced. The court found that "[i]t was [the Petitioner's] perception that Franke could not accept this, and would get angry[,] yelling at her about all the things he did for her and she did nothing for him, but would then 'flip a switch' and become nice and request that they should talk about it." The court found the Petitioner's testimony "more credible than that of Franke as to the parties['] interactions."

¶26 The circuit court also reviewed the 2013 emails between the Petitioner and Franke. It noted that, in the emails, the Petitioner asked Franke to leave the Petitioner and her family alone and determined that the emails "show[ed] a pattern of not accepting no for an answer." The court found that, after the emails, the Petitioner blocked Franke's email and cell phone.

¶27 The circuit court then turned to the evidence showing that Franke harassed the Petitioner. It found several incidents that showed Franke "could not accept or understand that contact with him was not wanted[,]" including: (1) Franke showed up at the Petitioner's children's swim meet, even though the Petitioner told Franke she did not want Franke there; (2) Franke would leave quarters on the Petitioner's deceased husband's burial plot; (3) Franke would bring pies to the Petitioner and leave birthday cards for her children in the Petitioner's mailbox; and (4) while the Petitioner and her daughter were waiting for the school bus, Franke came up to the Petitioner's car screaming and yelling at the Petitioner.

The circuit court found that these events happened after the Petitioner "had informed Franke to leave her and her family alone."

¶28 The circuit court then made several additional findings of harassment: (1) in 2014, when the Petitioner told Franke not to mow her lawn, Franke followed the Petitioner home and began ringing her doorbell constantly, which caused the Petitioner to call the police; (2) Franke left a letter dated May 19, 2014 in the Petitioner's mailbox, telling the Petitioner that he did not know how to communicate with her and that he was no longer going to pick up the dog feces on her lot; (3) Franke would walk around the Maple Ridge Subdivision, stop in front of the Petitioner's house, and look up the driveway for a few minutes; (4) Franke would linger on the dead-end street by the Petitioner's house; (5) Franke was in the neighborhood with a video camera two or three times and took a picture of the Petitioner and her children; (6) after Franke moved away in 2017, he would return to the Maple Ridge Subdivision and walk around to relive good memories; (7) Franke attended the Lord of Life Lutheran Church on a couple of occasions and was asked not to return; and (8) Franke parked his truck on the dead-end street where the Petitioner could see it. Based on all of this evidence, the court found that Franke intentionally engaged in a course of conduct which harassed or intimidated the Petitioner and which served no legitimate purpose.

¶29 Franke claims the circuit court erroneously exercised its discretion when it found that several of the harassing offenses happened after the Petitioner told Franke to leave her and her family alone. Specifically, Franke asserts that the following contacts either occurred before the 2013 emails or that it is unclear when they happened: the swim meet, leaving pies and birthday cards at the Petitioner's house, putting quarters at the Petitioner's deceased husband's burial plot, and the school bus incident. Franke thus appears to claim that these incidents

cannot be considered harassment because they occurred before the Petitioner made it clear in 2013 that Franke's contact was unwanted. We are not persuaded.

¶30    There is evidence in the record that the Petitioner made it clear to Franke *before 2013* that she did not want to have contact with him. Franke's own testimony shows that, as early as 2008, the Petitioner told Franke not to come to her house anymore. The Petitioner also told Franke in 2012 that she did not want Franke to come to her children's swim meet. Additionally, witness testimony puts many of the incidents in or around 2013. The Petitioner testified that Franke left birthday cards for her children in her mailbox after 2013, Franke testified that he left a pie in the Petitioner's doorway in late January or early February of 2013 or 2014, and the Petitioner's daughter testified that Franke started pounding on the window of their car and screaming while she was waiting for the school bus in 2013 or 2014. Accordingly, we are satisfied that there is evidence in the record to support the circuit court's finding that sufficient events happened after the Petitioner told Franke to leave her and her family alone.

¶31    We are also satisfied that the facts, as found by the circuit court, provide reasonable grounds for the court's finding that Franke intended to and did harass the Petitioner. *See* **Welytok**, 312 Wis. 2d 435, ¶26 (intent to harass is question of fact inferred from acts and statements of the person in view of the surrounding circumstances). Over the course of nearly ten years, the Petitioner repeatedly told Franke to leave her and her family alone. Despite these requests, Franke continuously tried to force the Petitioner to interact with him, often in threatening and intimidating ways. Franke showed up at the Petitioner's children's swim meet after the Petitioner told Franke not to come, left birthday cards in the Petitioner's mailbox and a pie in the Petitioner's doorway, sent unwanted emails and letters, mowed the Petitioner's lawn uninvited, yelled and

screamed at the Petitioner's car while she waited for the school bus with her daughter, attended the Petitioner's church after he moved, stood at the bottom of the Petitioner's driveway and stared at her house for a few minutes, and took at least one photograph of the Petitioner and her children. As a result of these contacts, the Petitioner blocked Franke's email and cell phone number and called the police. These facts provide reasonable grounds to support the court's finding of intent and harassment.

¶32 Franke also claims that the circuit court erroneously exercised its discretion when it found that his actions lacked a legitimate purpose. Franke provides what he claims are legitimate explanations for several of his contacts with the Petitioner: he sent the May 19, 2014 letter to inform the Petitioner that he would no longer pick up dog feces on her lot, returned to the Maple Ridge Subdivision eight times in 2018 to relive good memories of prior walks in the neighborhood, and carried a video camera with him to gather evidence in preparation for litigation. Again, we are not persuaded.

¶33 Conduct with a harassing or illegitimate purpose remains harassment, even if it is accompanied by an additional, legitimate purpose. *See Decker*, 355 Wis. 2d 800, ¶38. In this case, the totality of the circumstances reveal that Franke did not have a legitimate purpose for his actions. As we have seen, Franke was aware that the Petitioner did not want to have contact with him. Yet, for approximately ten years he persisted in attempting to contact her. Under these circumstances, any additional, legitimate purpose underlying his conduct cannot rectify his harassing conduct. *See id.* (A respondent "cannot shield his harassing conduct from regulation by labeling it" innocent conduct.).

¶34     In sum, we conclude that the facts, as found by the circuit court, provide reasonable grounds to believe that Franke engaged in a course of conduct that harassed or intimidated the Petitioner and served no legitimate purpose. Accordingly, we are satisfied the circuit court properly granted the harassment injunction.

B.     *Scope of Injunction*

¶35     Franke next claims that the provision prohibiting him from entering the Maple Ridge Subdivision is overbroad and infringes on his constitutionally protected right to travel.  He asserts that all of the acts supporting the injunction involve either direct contact or unsolicited help or gifts, which do not require Franke to be barred from the subdivision.  Franke also argues that the prohibition violates his constitutionally protected right to travel because he wishes to visit a friend and business associate who lives in the neighborhood.  We disagree.

¶36     The scope of an injunction is within the sound discretion of the circuit court.  *Welytok*, 312 Wis. 2d 435, ¶24.  Injunctions must be specific as to the prohibited acts and conduct in order for the person being enjoined to know what conduct must be avoided.  *Bachowski v. Salamone*, 139 Wis. 2d 397, 414, 407 N.W.2d 533 (1987).  Only the acts or conduct which are proven at trial and form the basis of the circuit court's finding of harassment or substantially similar conduct should be enjoined.  *Id.*

¶37     The provision prohibiting Franke from entering the Maple Ridge Subdivision is reasonably related to Franke's harassing conduct.  The circuit court found that Franke's harassing offenses toward the Petitioner occurred in multiple places throughout the subdivision:  Franke parked his truck on a dead-end street visible from the Petitioner's bedroom window, approached the Petitioner's car

while waiting at a bus stop, stopped in front of the Petitioner's house and stared at it, lingered in the dead-end street next to the Petitioner's house, walked through the neighborhood with a video camera, and took a photograph of the Petitioner and her children from the neighbor's yard. Based on these facts, we conclude that the circuit court had reasonable grounds to prohibit Franke from entering the Maple Ridge Subdivision.

¶38 We also conclude that the scope of the injunction does not infringe on Franke's constitutional rights. Geographic limitations are not a per se violation of constitutional rights. *See **Predick v. O'Connor***, 2003 WI App 46, ¶18, 260 Wis. 2d 323, 660 N.W.2d 1. Each case must be analyzed on its own facts, circumstances, and total context to determine whether the geographic restriction is narrowly drawn. ***Id.*** In this case, the reasonableness of the circuit court's geographic restriction is based on the fact that Franke's harassing conduct occurred throughout the subdivision. The Petitioner is entitled to a "zone of protection" in which she can attempt to live her life in peace. *See **id.***, ¶1. The provision prohibiting Franke from entering the Maple Ridge Subdivision is narrowly tailored to achieve this objective.

C. *Discovery*

¶39 Finally, Franke claims that the circuit court erroneously exercised its discretion when it denied his request for additional discovery. We begin by examining the circuit court's oral decision denying Franke's motion. The circuit court explained that it was denying Franke's motion for two reasons. First, it denied the motion because "the case has been pending over a year…. I know there's been hearings, et cetera." Second, it stated that it did not believe that the legislature intended for the normal discovery procedures to apply to harassment

injunctions: "[U]nder [WIS. STAT. §] 813.125[(3)](c) it provides essentially that the injunction will be heard essentially 14 days after the temporary [hearing]. Obviously there's no time for discovery in that time frame so I don't think the legislature contemplated that."[2]

¶40    As an initial matter, Franke argues that his request for additional discovery should be reviewed under WIS. STAT. ch. 804 discovery procedures. While he admits that the use of civil discovery procedure is generally inconsistent with the fourteen-day requirement in WIS. STAT. § 813.125(3)(c), he notes that § 813.125(3)(c) allows the circuit court to extend the fourteen-day time limit with the consent of the parties. Franke argues that, in these limited situations, the general rules of civil discovery should apply. It is not necessary for us to reach the merits of Franke's discovery argument because he failed to show that the circuit court erroneously exercised its discretion.

¶41    Under WIS. STAT. § 804.01(3), circuit courts have broad discretion in determining whether to limit discovery through a protective order. **Paige K.B. v. Steven G.B.**, 226 Wis. 2d 210, 232, 594 N.W.2d 370 (1999). Where a movant "show[s] good cause, § 804.01(3) permits the circuit court to make any order 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *See* **Paige K.B.**, 226 Wis. 2d at 232 (quoting WIS.

---

[2] WISCONSIN STAT. § 813.125(3)(c) provides, as relevant:

> A judge or circuit court commissioner shall hold a hearing on issuance of an injunction within 14 days after the temporary restraining order is issued, unless the time is extended upon the written consent of the parties, extended under s. 801.58 (2m), or extended once for 14 days upon a finding that the respondent has not been served with a copy of the temporary restraining order although the petitioner has exercised due diligence.

STAT. § 804.01(3)). We review the circuit court's decision for an erroneous exercise of discretion and will affirm as long as the circuit court examined the relevant facts, applied the proper legal standard, and reached a reasonable conclusion. *Id.* at 232-33.

¶42 As we have seen, in this case, the circuit court orally denied Franke's motion for additional discovery because the case had been pending for over one year. Franke claims that this is an erroneous exercise of discretion because the court did not engage in any significant analysis. We are not persuaded.

¶43 Our examination of the record shows a reasonable basis for the circuit court's ruling. *See Welytok*, 312 Wis. 2d 435, ¶24 (we generally look for reasons to sustain discretionary rulings). At the time of Franke's request for additional discovery, Franke had already conducted six depositions. Aside from a general statement to the court that discovery was necessary to name witnesses and take depositions, Franke did not tell the court which witness he sought to depose or provide the court with the specific information he sought. Under these circumstances, the circuit court properly exercised its discretion when it denied Franke's motion for additional discovery. *See, e.g.*, ***Kinnick v. Schierl, Inc.***, 197 Wis. 2d 855, 865, 541 N.W.2d 803 (Ct. App. 1995) (party claiming additional discovery is necessary has burden to show by more than mere speculation that the discovery is relevant).

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

16