COURT OF APPEALS
DECISION
DATED AND FILED

May 31, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP908-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF429

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MATTHEW E. KINSERDAHL,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Monroe County: RICHARD A. RADCLIFFE, Judge. *Affirmed*.

Before Blanchard, Graham, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Matthew Kinserdahl appeals a judgment of conviction for violating a harassment injunction and bail jumping following a jury

trial, and an order denying his postconviction motion for a new trial. Kinserdahl contends that his trial counsel was ineffective by failing to request that the circuit court modify the standard jury instruction for the offense of violating a harassment injunction to instruct that "harassment" does not include speech that has a "legitimate purpose." Kinserdahl also contends that he was entitled to a jury instruction explaining that only "true threats" can create criminal liability. Finally, Kinserdahl argues that a new trial is warranted in the interest of justice. We conclude that Kinserdahl's trial counsel was not ineffective by failing to request the jury instruction modifications that Kinserdahl asserts should have been requested, and that a new trial is not warranted in the interest of justice. We affirm.

*Background*

¶2 Kinserdahl was charged with bail jumping, violating a harassment injunction, and disorderly conduct based on a conflict with his ex-wife, A.B., during a scheduled child exchange.[1] The harassment injunction that was in effect directed Kinserdahl to: (1) "cease or avoid the harassment of [A.B.]"; (2) "avoid [A.B.'s] residence and/or any premises temporarily occupied by" her; and (3) "avoid contact that harasses or intimidates [A.B]." The injunction also provided that the circuit court in the divorce action was authorized to enter specific written orders to allow limited contact between the parties for purposes of child visitation, communication about the child, and emergencies about the child, and that all such orders would be exceptions to the injunction.

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2021-22), we use initials that do not match the victim's name when referring to her. All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶3 At trial, there was no dispute about the following facts. The parties met at a convenience store parking lot for a scheduled child exchange, as authorized by the circuit court in the divorce action. A.B. and Kinserdahl parked their vehicles about six or seven spaces from each other and exited their vehicles. A.B. walked their child toward Kinserdahl, transferred their child to him, and walked back toward her own vehicle.

¶4 The parties disputed what happened next. A.B. testified to the following sequence of events immediately following the child exchange. As A.B. was walking back toward her car, Kinserdahl began yelling and swearing, so A.B. turned back to look toward him. Kinserdahl yelled at A.B. that she was "a stupid bitch, a cunt, a piece of shit," and "I hope you die, I effing hate you." As Kinserdahl was yelling at A.B., Kinserdahl walked toward A.B., until he was within about two feet of her. Kinserdahl also screamed at A.B.'s fiancé, who was seated in her car, "Come on, you dumb fucker, get out of the car, let's go, let's go, let's go." A.B. told her fiancé to call 911. Kinserdahl said, "Go call the fucking cops, I don't care, call 'em, call 'em," and started walking back toward his vehicle. Kinserdahl then got in his vehicle, "peeled out," and pulled up in front of A.B.'s vehicle so that his vehicle was about one foot from her bumper. Kinserdahl opened his vehicle door, put a leg out of the vehicle, and continued yelling at A.B. Kinserdahl then got back into his vehicle and drove away.

¶5 Kinserdahl, in contrast, testified to the following sequence of events following the child exchange. As Kinserdahl was securing the child in his vehicle, he looked over toward A.B.'s vehicle and saw A.B. and her fiancé gesturing toward each other as if to say, "[W]hat's going on[?]" Kinserdahl thought maybe they wanted to discuss something about the child, so he finished securing the child in the vehicle, then went around the corner of the vehicle and asked if there was

3

anything they needed to discuss related to the child. A.B. asked Kinserdahl, "Did you get my certified letter in the mail[?]" which he took to be a reference to a letter she had sent him requesting placement of the child during a weekend when the child was scheduled to be with Kinserdahl.[2] Kinserdahl responded that he had received the letter but that he intended to exercise his placement as scheduled, and that if A.B. failed to comply, he would take legal action. A.B. started screaming at Kinserdahl that the conversation was in violation of the restraining order. Kinserdahl denied calling A.B. any names or saying that he wished she would die. When Kinserdahl realized the conversation was not going to be productive, he got into his vehicle and started driving away. He could see that A.B. was agitated and yelling, but he could not hear her because his window was rolled up. Because Kinserdahl had to pass A.B.'s vehicle on his way out of the parking lot anyway, he pulled up next to A.B.'s vehicle and opened his door for a second to hear if A.B. was telling him something. At that point, Kinserdahl heard A.B. say, "I'm calling the cops." Kinserdahl told her, "[Y]ou can call whoever you'd like," and drove home.

¶6    The jury found Kinserdahl guilty of knowingly violating an injunction and bail jumping, but not guilty of disorderly conduct, and the circuit court sentenced him.

¶7    Kinserdahl filed a postconviction motion seeking a new trial on grounds of ineffective assistance of trial counsel. The circuit court held a *Machner*[3] hearing and, after the hearing, determined that Kinserdahl's trial

---

[2] During A.B.'s testimony, she agreed that, prior to the child exchange, she had sent Kinserdahl a certified letter requesting placement of the child on her upcoming wedding day.

[3] *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

4

counsel was not ineffective. The court denied the postconviction motion. Kinserdahl appeals.

*Standard of Review*

¶8 A party claiming ineffective assistance of trial counsel must show that counsel performed deficiently and also show that the deficient performance prejudiced the defendant. *See **Strickland v. Washington***, 466 U.S. 668, 687 (1984). To establish deficient performance, the defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." ***Id.*** To establish prejudice, the defendant must demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Id.*** at 694. We need not address both components of this inquiry if the defendant does not make a sufficient showing on one. *See **id.*** at 697.

¶9 We review an ineffective assistance of counsel claim as a mixed question of fact and law. *See **State v. Erickson***, 227 Wis. 2d 758, 768, 596 N.W.2d 749 (1999). The circuit court's findings of fact will not be disturbed unless they are clearly erroneous. ***Id.*** "We independently review, as a matter of law, whether those facts demonstrate ineffective assistance of counsel." ***State v. Pico***, 2018 WI 66, ¶13, 382 Wis. 2d 273, 914 N.W.2d 95.

*Discussion*

¶10 Kinserdahl argues that the charge of violating a harassment injunction was based solely on the claim that Kinserdahl's *speech* was "harassment" or "contact [that] harassed or intimidated" A.B., and that his alleged offensive speech was entitled to First Amendment protection. *See **Street v. New***

*York*, 394 U.S. 576, 592 (1969) ("It is firmly settled that under our Constitution the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers."). Kinserdahl contends that, to separate "protected" from "unprotected" speech, a prosecution for violating a harassment injunction based on speech alone requires a finding that the speech served "no legitimate purpose." *See* WIS. STAT. § 813.125(1)(am)4.b. (defining "harassment" as "committing acts which harass or intimidate another and which serve no legitimate purpose"); ***Welytok v. Ziolkowski***, 2008 WI App 67, ¶¶25, 30, 312 Wis. 2d 435, 752 N.W.2d 359 (harassment is committed "when the actor, 'with intent to harass or intimidate another person ... [e]ngages in a course of conduct or repeatedly commits acts which harass or intimidate the person and which serve no legitimate purpose'" (quoted source omitted)).

¶11 From that premise, Kinserdahl contends that his trial counsel should have requested a modification to the standard jury instruction for violating an injunction, WIS JI—CRIMINAL 2040, to instruct the jury "that it may only find that a defendant violated an injunction by harassment [if] the relevant statements did not have any legitimate purpose when they were made." Kinserdahl contends that, absent a modification to define "harassment" as excluding speech that served a "legitimate purpose," the jury could have improperly defined "harassment" and "intimidation" by the effect that his words had on A.B. rather than on his intent. Kinserdahl contends that an instruction as to "legitimate purpose" was necessary for the jury to consider whether his speech was constitutionally protected because he had the "legitimate purpose" of communicating with A.B. about the upcoming placement schedule for the child. He also argues that he was prejudiced by the lack of a "legitimate purpose" instruction because the jury found him not guilty of disorderly conduct. He argues that this finding "necessarily implies that the jury

6

concluded either that the State did not meet its burden of showing that [he] caused or provoked a disturbance, or that his behavior was reasonable enough under the circumstances [that the jury] did not consider the speech [to be] violent, abusive, indecent, profane, boisterous unreasonably loud, or otherwise disorderly." Therefore, Kinserdahl argues, the jury "would have paid careful attention to" an instruction that he could not be convicted for the injunction violation if his speech had a legitimate purpose.

¶12    We are not persuaded that the jury instruction modification that Kinserdahl proposes would have been appropriate in this case for two reasons.

¶13    First, contrary to Kinserdahl's assertion, the prosecution theory was not that he violated the harassment injunction based on speech alone, and there was evidence of potentially harassing conduct beyond speech. As summarized above, A.B. testified that, while Kinserdahl yelled profanities at her, he walked up to and within two feet of her, and that he then "peeled out" in his vehicle and drove within a foot of the bumper of her vehicle, opened the door, and put his leg out of the vehicle while continuing to yell at her.[4]

¶14    Kinserdahl disputes that the jury could have found that this alleged conduct either harassed or intimidated A.B. Rather, he contends, this conduct was at most merely "bothersome or annoying," because it was "'immature, immoderate, rude or patronizing.'" *See Bachowski v. Salamone*, 139 Wis. 2d 397, 407-08, 407 N.W.2d 533 (1987) (quoted source omitted). We are not

---

[4] A.B. also testified that during this incident she and Kinserdahl had no discussion about the upcoming placement for their child and that she did not know what provoked Kinserdahl to act in this aggressive manner.

persuaded that no reasonable jury could have concluded that Kinserdahl's actions, including his speech, "harassed" or "intimidated" A.B. *See id.* (holding that "harass" and "intimidate" under WIS. STAT. § 813.125(1)(b) should be given their dictionary definitions; that is, "'[h]arass' means to worry and impede by repeated attacks, to vex, trouble or annoy continually or chronically, to plague, bedevil or badger"; and "'[i]ntimidate' means 'to make timid or fearful'" (quoted source omitted)).

¶15 Second, as Kinserdahl concedes, our supreme court has held that speech is "harassment" if it is intended to harass or intimidate, even if it also serves a legitimate purpose. *See Board of Regents-UW System v. Decker*, 2014 WI 68, ¶38, 355 Wis. 2d 800, 850 N.W.2d 112, (rejecting the argument that speech which serves a legitimate purpose cannot be harassment, and explaining that "Decker cannot shield his harassing conduct from regulation by labeling it 'protest'"; and, if his "purpose was even in part to harass the Board of Regents, his conduct may be enjoined under WIS. STAT. § 813.125").

¶16 We turn to Kinserdahl's contention that he was entitled to a modification of the jury instruction regarding harassment injunctions to include an instruction as to a "true threat" under *State v. Perkins*, 2001 WI 46, 243 Wis. 2d 141, 626 N.W.2d 762.[5] *Perkins*, however, is inapposite.

---

[5] The State argues that Kinserdahl is limited to raising this argument under the rubric of ineffective assistance of trial counsel because his counsel did not preserve this objection to the jury instructions at trial. *See State v. McKellips*, 2016 WI 51, ¶47, 369 Wis. 2d 437, 881 N.W.2d 258. Kinserdahl does not dispute that contention in reply, and we accept his failure to refute the State's argument as a concession that this claim must be analyzed as one of ineffective assistance of trial counsel. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (failure by appellant to respond in reply brief to an argument made in respondent's brief may be taken as a concession).

¶17    Perkins was charged with threatening a judge. *Id.*, ¶1. Our supreme court recognized that "some threatening words are protected speech under the First Amendment" and that "[o]nly a 'true threat' is constitutionally punishable under statutes criminalizing threats." *Id.*, ¶¶17, 29. The ***Perkins*** court addressed whether the jury instruction for the crime of threatening a judge "adequately explain[ed] to the jury the difference between a 'true threat' and protected free speech." *Id.*, ¶32. The court held that the jury instruction did not sufficiently instruct the jury on that essential element of the crime and, for that reason, the controversy had not been fully tried. *Id.*, ¶¶37, 49.

¶18    Thus, in ***Perkins***, the charged crime of threatening a judge required the State to prove beyond a reasonable doubt "that the defendant threatened to cause bodily harm to [the judge]." *Id.*, ¶34. Here, Kinserdahl was charged with violating a harassment injunction. The elements that the State is required to prove for that crime are the following: (1) an injunction was issued against Kinserdahl; (2) Kinserdahl committed an act that violated the terms of the injunction; and (3) Kinserdahl knew that the injunction had been issued and knew that his acts violated its terms.[6] *See* WIS JI—CRIMINAL 2040. None of these elements required the State here to show that Kinserdahl "threatened" A.B., and the jury was not instructed to find whether Kinserdahl made a "threat" against her.[7] It is

___

[6] Kinserdahl asserts that the circuit court erred to the extent that it could be interpreted to have stated that Kinserdahl's mere presence at the parking lot, in and of itself, could have constituted a violation of the harassment injunction. However, Kinserdahl makes no argument that he was charged or convicted based solely on his presence at that time and place, and we do not address this assertion further.

[7] "A true threat is a statement that a speaker would reasonably foresee that a listener would reasonably interpret as a serious expression of a purpose to inflict harm, as distinguished from hyperbole, jest ... or other similarly protected speech." ***State v. Perkins***, 2001 WI 46, ¶29, 243 Wis. 2d 141, 626 N.W.2d 762. Following ***Perkins***, the jury instruction for the crime of threatening a judge now provides the following definition:

(continued)

9

true that the proof here included allegations that Kinserdahl said to A.B., "I hope you die," and that he said to A.B.'s fiancé, "get out of the car, let's go, let's go, let's go." Both statements are aggressive and hostile, with the second being an invitation to what would be a mutual physical fight. But neither is reasonably characterized as a threat. For all of these reasons, we conclude that Kinserdahl's trial counsel was not ineffective for failing to request the "true threats" instruction under *Perkins*.

¶19 Kinserdahl requests that we exercise our discretion to order a new trial in the interest of justice. We may order a new trial in the interest of justice "if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried[.]" WIS. STAT. § 752.35. However, we do so only in exceptional cases. *See State v. McKellips*, 2016 WI 51, ¶30, 369 Wis. 2d 437, 881 N.W.2d 258. Here, Kinserdahl argues that the real controversy was not fully tried because the jury should have been instructed to find Kinserdahl not guilty "if his behavior was consistent with a legitimate purpose, particularly responding to an upset former spouse and attempting to ensure that he was able to see his child pursuant to the Family Court order." He contends that, without the definition of "harassment" as excluding speech with a

---

> A "threat" is an expression of intention to do harm and may be communicated orally, in writing, or by conduct. This element requires a true threat. "True threat" means that a reasonable person would interpret the threat as a serious expression of intent to do harm, and the person making the statement is aware that others could regard the statement as a threat and delivers it anyway. It is not necessary that the person making the threat have the ability to carry out the threat. You must consider all the circumstances in determining whether a threat is a true threat.

WISCONSIN JI—CRIMINAL 1240B.

"legitimate purpose," the jury was left with the impression that it could convict Kinserdahl based "solely on legally protected speech."

¶20    For reasons we have already essentially explained, we conclude that justice has not miscarried and that extraordinary relief is not warranted in this case. We are not persuaded that the real controversy was not fully tried because the jury was not instructed that Kinserdahl could not be convicted unless his speech served no legitimate purpose. Even accepting Kinserdahl's premise that the purpose of his speech was to communicate with A.B. about future child placement, that "legitimate purpose" did not shield his conduct from violating the harassment injunction if it was also intended to harass or intimidate A.B. *See* ***Board of Regents-UW System***, 355 Wis. 2d 800, ¶38. The dispute in this case was whether Kinserdahl violated the harassment injunction by harassing or intimidating A.B., and that controversy was fully tried. Thus, we decline to exercise our discretionary powers to order a new trial in the interests of justice. We affirm.

        *By the Court*.—Judgment and order affirmed.

        This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.